SOUTHWICK, P.J.,
for the Court:
¶ 1. Hazel Young was awarded workers’ compensation benefits for an injury which she sustained at work. Her employer and its insurance carrier appealed, arguing that the injury was the result of a preexisting condition. The Commission affirmed the finding that the injury was job-related, as did the Marshall County Circuit Court. The employer and carrier appeal and again argue that the evidence does not confirm that Mrs. Young suffered a job injury. We disagree and affirm.
FACTS
¶ 2. Hazel Young was employed by Sealed Power Corporation, a warehouse storage and distribution facility located in Olive Branch. Her job duties included receiving automotive parts, storing them, and entering their location in a computer. On July 11, 1990, Mrs. Young was attempting to place some parts on a shelf which was out of her reach. She stood on a cart with her feet about three feet apart. When she reached out to place a part on the shelf, the cart began to roll. While holding on to the shelf, she attempted to pull the cart back. Her left leg then twisted and Mrs. Young felt what she described as “a bolt of lightning” traveling through her leg and knee.
¶ 3. According to Mrs. Young, she somehow managed to get back to the receiving department and there paged her supervisor, Larry Mays. She told him that she had been hurt and needed to go to the emergency room. She then told a coworker, Floyd Williams, that she had been hurt and asked him to get Brian Abare, the plant supervisor. Mr. Abare arrived in a golf-cart and drove Mrs. Young to a telephone so that she could call her husband. When her husband arrived, another supervisor, Forest Nabors, drove Mrs. Young to the shipping room where her husband lifted her off the cart and placed her in the car. Her subsequent medical treatment will be discussed below.
¶ 4. On February 12, 1991, Mrs. Young filed a petition to controvert with the Commission, alleging that she injured her left knee on the job. Her employer denied that her disability was work-related. A hearing was held before an administrative law judge on March 1, 1994. The judge found that Mrs. Young had suffered a compensable accidental injury for which she was entitled to temporary total benefits from July 11, 1990, until May 13, 1993, medical benefits, and permanent partial disability for 175 weeks for the loss of a scheduled member.
¶ 5. The employer and carrier appealed to the Commission, which affirmed the administrative judge’s order finding that the injury was job-related. The Marshall County Circuit Court affirmed.
DISCUSSION
¶ 6. We will affirm the findings of the Workers’ Compensation Commission if they are supported by substantial evidence. Sibley v. Unifirst Bank, 699 So.2d 1214, 1217 (Miss.1997). If on the other hand, such findings are clearly erroneous and contrary to the overwhelming weight of the evidence, we will reverse. Id. at 1218.
¶ 7. The issues all focus on the evidence to support the finding of a work-related origin for Mrs. Young’s medical problems. Nonetheless, the employer divides the complaint this way: that the evidence was not substantial, that some of the evidence was inconsistent and untrustworthy, and finally that no causal connection was shown between whatever happened at work and Mrs. Young’s present physical problems. We examine the entire question together.
¶ 8. Records from the East Memphis Family Clinic reveal that a Dr. Gold-hammer examined Mrs. Young on June 23, 1990, three weeks before the alleged job injury on July 11. She complained of pain *815 starting at her heel and moving up to her calf and knee. According to the employer, this demonstrates that Mrs. Young’s injury did not occur on the job. Additionally, Mrs. Young’s co-worker, Floyd Williams, testified that Mrs. Young left work on the day of the accident because of problems with her foot and that she did not tell him that she had been hurt at work. He went on to state that Mrs. Young had been limping for three to four weeks prior to the accident due to a bone spur in her heel. Mr. Williams claims that he first learned around Christmas that Mrs. Young was claiming an on-the-job injury.
¶ 9. The employer also points to memo-randa prepared by the plant supervisor, Brian Abare, on the day of the accident in support of its claim that Mrs. Young left work due to a pre-existing injury unrelated to her employment. Another employee, Peggy Campbell, testified as to the contents of Mrs. Young’s personnel file. She stated that Sealed Power first became aware in October of 1990 that Mrs. Young was claiming a work injury. She also testified that two memoranda prepared by former plant supervisor Brian Abare were in Mrs. Young’s personnel file.
July 11,1990
Hazel Young left for doctor. Spur in left heel caused her to be unable to work.
July 11,1990
Floyd flagged me down in warehouse and told me to go pick' up Hazel that she was in pain and could not walk. I found her at her work station. She said that she had a flare up of a spur in her heel and that pain was all the way past her knee. I took her to a phone and she called her husband to come get her. She left at about 14:00.
Mr. Abare did not testify and is no longer employed by Sealed Power.
¶ 10. Mrs. Young admitted that she had visited a physician on June 23, 1990. However, she maintained that it was for treatment of a sore spot on her heel, which she considered a “stone bruise.” She stated that she was given pain medication and, within two weeks, was able to walk with some soreness. Mrs. Young testified that she has had no further problems with her heel and that it did not interfere with her job. She also denied informing either Brian Abare or Floyd Williams that she was leaving work due to problems with her heel.
¶ 11. The evidence supporting her claims is significant. Mrs. Young testified that she twisted her knee when a cart rolled out from under her when she was shelving auto parts while working at Sealed Power. Her husband stated that when he picked his wife up at work, her knee was swollen and red. Medical records from Mrs. Young’s emergency room visit do not confirm her testimony that she informed either the nurse or physician that she was injured at work. However, all subsequent records reveal that she reported the work-related injury to each later physician whom she visited.
¶ 12. Dr. Sage of the Campbell Clinic examined Mrs. Young on July 13, 1990, two days after the accident. Medical records from that visit reveal that Mrs. Young “has had some mild knee pain before this time, however, at work two days ago ... she had to twist her knee to keep from falling and had significant pain in the posterior aspect of her knee since this time.” A July 31 bone scan revealed a possible stress fracture. He later referred her to his partner, Dr. Sisk, whom Mrs. Young saw on September 19, 1990. At that time, Dr. Sisk noted that she had a “reflex sympathetic dystrophy problem in her knee.” Dr. Sisk referred Mrs. Young to Dr. O’Sullivan, a neurologist with the Semmes-Murphey Clinic. Dr. O’Sullivan examined Mrs. Young on October 25, 1990, and noted that she had been diagnosed with possible reflex sympathetic dystrophy. He found no neurologic cause for her pain and noted that “[sjome of her weakness appears non-anatomic.”
¶ 13. Dr. Moacir Schnapp, a neurologist at The Pain Clinic, examined Mrs. Young *816 on November 2, 1990. Her medical history reveals that Mrs. Young informed Dr. Schnapp that she had been injured at work. During his deposition, Dr. Schnapp stated that reflex sympathetic dystrophy is consistent with the injury that Mrs. Young described. Dr. Schnapp went on to explain that reflex sympathetic dystrophy is “a condition that ... arises as a reflex very often secondary to a trauma.... It involves the automatic nervous system or more specifically the sympathetic nerves. And the name dystrophy implies that there are changes in the tissue with very often swelling, changes in temperature of the skin, changes in the bone, changes in joints, changes in the growth of the hair and nails, etc.” He testified that reflex sympathetic dystrophy is not psychological.
¶ 14. When asked to review Mrs. Young’s medical records from her emergency room visit, Dr. Schnapp testified that it is possible that reflex sympathetic dystrophy could have been developing since March or April. However, he stated that reflex sympathetic dystrophy does not usually develop slowly but rather the onset of the condition occurs quickly, “sometimes immediately, within minutes or hours of the injury, sometimes within a few days.” On cross-examination, Dr. Schnapp admitted that had he been given the same history that appears on Mrs. Young’s emergency room records, he could not say for certain that her injury was related to her employment.
¶ 15. Over the course of three years, Dr. Schnapp and his partner, Dr. Kit Mays, treated Mrs. Young with a series of nerve blocks, anti-depressants, anti-inflammatory medication, hormones, and an anti-seizure medication. He also referred her to Dr. Claudio Feler who surgically implanted a nerve stimulator in Mrs. Young’s back to relieve the pain. Dr. Schnapp determined that Mrs. Young reached maximum medical improvement by May 13, 1993, and diagnosed a 100% permanent impairment to the left lower extremity and a 40% impairment to the body as a whole. He testified that he wishes to continue a course of physical therapy so that Mrs. Young might maintain the improvements she has made. He does not expect any significant changes in her condition.
¶ 16. The employer and carrier argue that because Mrs. Young’s testimony regarding the accident is uncorroborated and is contradicted by other Sealed Power employees, it is untrustworthy and the Commission was bound to reject it. The employer relies on a precedent in which the Commission denied recovery to a claimant who allegedly suffered an unwitnessed back injury at work. Hamilton Mfg. Co. v. Kern, 242 So.2d 441, 443 (Miss.1970). The claimant had previously been treated for back trouble and had failed to report his alleged injury to co-workers or supervisors on the day of the accident. Hamilton does not create a rule that the Commission must reject a claimant if her injury was unwitnessed. It does permit the Commission to make a case-by-case credibility determination.
¶ 17. A “claimant is competent to prove his own claim, and his testimony may be accepted without corroboration. It may be acted upon although disputed by other witnesses and if undisputed and not untrustworthy, must be taken as conclusive proof of the fact.” Penrod Drilling Co. v. Etheridge, 487 So.2d 1330, 1333 (Miss.1986). The Commission noted that “[cjlaimant was emphatic in her statements that all she ever had prior to this alleged injury was a sore heel, a condition which was not severe in nature and which seemingly disappeared after a period of a few weeks.” The Commission also relied on the testimony of Mrs. Young’s husband, noting that he distinguished between the prior heel problem and the current knee injury. “Mr. Young testified that the heel pain and any problems incidental to the heel problem did not interfere with her life or his in any significant way. However, in reference to the knee pain and the problems therein, Mr. Young said it did significantly interfere with her life and, of course, his.”
*817 ¶ 18. The Commission rejected the importance of the medical records from Mrs. Young’s visit to the emergency room on the date of the injury. The records referred to Mrs. Young’s prior problems and her complaints of “increased pain” in her knee but did not mention a claim of a job injury. Dr. Ron Russell, the emergency room physician who treated Mrs. Young, testified that she did not inform him of a work injury. The Commission found that the testimony of Dr. Russell was unreliable since he saw Mrs. Young for less than thirty minutes. The Commission found that “he had no real diagnosis or pertinent information to offer except to say that she did not give him any indication that she had been hurt at work.” It further explained that, “[i]t appears that Dr. Russell’s entire recollection of this event is somewhat hazy.”
¶ 19. The Commission is the trier of the facts and the judge of the credibility of a witness. Penrod Drilling Co. v. Etheridge, 487 So.2d 1330, 1332 (Miss.1986). The Commission found the testimony of Mrs. Young and her husband more credible than the evidence offered by the employer and carrier. The Commission had to find that Mrs. Young had an accidental injury, at work, and that there was a causal connection between the injury and the resulting disability. Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 13 (Miss.1994). There was substantial evidence to support each part of this decision by the Commission.
¶ 20. THE JUDGMENT OF THE MARSHALL COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.