928 So.2d 176 (2005)
Janie STEWART, Appellant
v.
SINGING RIVER HOSPITAL SYSTEM and Sedgwick of MS, Inc., Appellees.
No. 2004-WC-00707-COA.
Court of Appeals of Mississippi.
August 9, 2005.
Rehearing Denied January 17, 2006.
Certiorari Denied May 4, 2006.
*177 Douglas Bagwell, Thomas Lynn Carpenter, Gulfport, attorneys for appellant.
Michael J. McElhaney, Gina Bardwell Tompkins, Pascagoula, attorneys for appellees.
Before KING, C.J., CHANDLER and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. The Circuit Court of Jackson County affirmed the Mississippi Workers' Compensation Commission's findings that Janie Stewart was not permanently disabled as a result of her work-related injury. The Commission had reversed the decision of the administrative law judge who found Stewart disabled. We reverse the decision of the circuit court and the Commission and find that the decision of the administrative law judge was correct. We therefore reverse and remand to the Commission to reinstate the decision of the administrative law judge and properly award Stewart benefits.
¶ 2. On appeal, Stewart raises the following issues, which we quote:
(1) The Commission's decision in this case relies on an unsupportable opinion by Leon Tingle which is based on facts not in evidence, in that Tingle stated that Dr. Laseter reported that Stewart could work at a sedentary level, when Dr. Laseter never made that finding;
(2) By determining that Stewart should have also gone back to work based upon non-treating physicians' restrictions, one an IME opinion, and another given nearly two years before Stewart finally came off work, the Commission's decision is clearly in conflict with established Mississippi law on whose medical advice a claimant is entitled to rely upon whether to seek employment, resulting in distinctive prejudice in this case;
(3) The Commission's determination, made without any consideration of Stewart's continuing pain arising from this accident, makes that decision clearly erroneous and incorrect as a matter of law;
(4) The Commission's failure to determine whether this accident was a compensable injury under the Act, or even to address whether Stewart *178 is entitled to continued medical treatment, is clearly erroneous.

FACTS
¶ 3. Janie Stewart obtained a licensed practical nurse (LPN) degree in 1968 and worked as a staff LPN nurse at Singing River Hospital from 1968 to 1979. In 1979 she became a registered nurse (RN) and continued to work at Singing River Hospital from 1979 to 1985. Stewart then worked briefly at the V.A. Medical Center in Biloxi from 1985 to 1987. After that, Stewart returned to work at Singing River Hospital System, working at the Ocean Springs Hospital from 1987 to 1994 as a RN staff nurse, and from 1994 to 1995 working as a RN charge nurse. Stewart then transferred within the Singing River Hospital System to Kare-in Home Health and worked as a RN staff nurse from 1995 to 1997.
¶ 4. On or about October 31, 1996, Stewart was injured while employed by Kare-in Home Health. Stewart attempted to sit in a chair which rolled out from under her and caused her to fall to the floor, landing on her buttocks and striking her head. Stewart reported the accident and initially only experienced slight discomfort. Her neck and low back pain gradually worsened.
¶ 5. After seeking treatment for her low back pain at Ocean Springs Hospital, Stewart then went to her family physician, Dr. Steven Fineburg, in January 1997. Dr. Fineburg advised Stewart to leave work at that time. Treatment with physical therapy was not successful, and Dr. Fineburg referred Stewart to Dr. John McCloskey, a neurosurgeon, for her low back pain and pain radiating down her right leg and into her foot.
¶ 6. After conducting a series of tests, including myelograms, Dr. McCloskey diagnosed Stewart with spinal stenosis or narrowing of the nerve cord spaces at L4-L5 and L5-S1. Dr. McCloskey found that the Stewart was a good candidate for surgery, specifically a decompressive foraminotomy. In March 1997, Dr. Robert White concurred with the need for decompressive surgery. On April 14, 1997, Dr. McCloskey performed hemilaminectomies, foraminotomies, and partial facetomies at the L4-L5 and L5-S1 levels.
¶ 7. After experiencing initial improvement after the surgery, in May 1997, Stewart began to experience a reoccurrence of pain in the same areas as before the surgery. Dr. McCloskey began a regime of physical therapy which did help Stewart with leg pain but did not resolve the problem with back pain. In August 1997, Dr. McCloskey stated that Stewart could return to work with certain restrictions. Stewart returned to work part-time at first and within a month, full time.
¶ 8. The result was that Stewart lost work from January 13, 1997, the date Dr. Fineburg advised her to stop work, until September 1997, when Dr. McCloskey allowed her to return to work with restrictions. Stewart worked as a re-certification nurse from September 1997 to November 1998, when the hospital discontinued its contract with Kare-in Home Health. Stewart was then reassigned to Ocean Springs Hospital in the education department teaching new nurse assistants.
¶ 9. During the time that Stewart was working for Kare-in Home, she was in a great deal of pain and was taking pain medication to control that pain. Her pain was evident to her co-workers and her supervisor, Nettie Coffey, who testified that she saw Stewart in pain on several occasions.
¶ 10. In August 1998, Stewart requested that Dr. McCloskey refer her to Dr. Jeffery Laseter. Dr. Laseter first saw *179 Stewart in December 1998 and diagnosed her with post-laminectomy syndrome and cervical myofacial pain. Stewart continued to see Dr. Laseter, and in January 1999, Dr. Laseter placed Stewart on additional physical therapy which was not successful in reducing her pain.
¶ 11. In October 1999, Stewart was involved in an automobile accident which aggravated her pain, particularly in her neck. Stewart continued to work until July 6, 2000, when Dr. Laseter took Stewart off work because of her pain. Dr. Laseter's specifically stated that Stewart was to be "off work until further notice." On August 25, 2000, at a follow-up visit to Dr. Laseter, he noted improvement due to her lack of work activity. On August 28, 2000, Dr. Laseter issued new restrictions, stating that Stewart was not to bend, crawl, stand or walk, twist/push or pull and "patient is to remain off work for an undetermined period of time."
¶ 12. On November 17, 2000, Dr. Laseter stated that Stewart could not work at any activity full-time and stated that she had achieved maximum medical recovery for her condition. Dr. Laseter stated that he had attempted to find her a part-time position with the hospital, but that the Singing River Hospital System did not have any part-time positions. On May 17, 2001, Dr. Laseter stated that Stewart was permanently and totally disabled and "will not be able to work in any type of work capacity."
¶ 13. Leon Tingle, a vocation rehabilitationist hired by the employer/carrier, interviewed Stewart in October 2001. In his statement, Tingle noted that Dr. Laseter felt that Stewart was totally and permanently disabled from any employment. Tingle stated that Dr. Laseter indicated "that there was a possibility she may be able to perform some sedentary level jobs." Tingle sent sedentary job descriptions to Dr. Laseter for review, and Dr. Laseter rejected each of them for Stewart.
¶ 14. The administrative law judge found that Stewart had suffered a compensable injury, was entitled to continuing reasonable and necessary medical services relating to the injury, and was permanently and totally disabled as a result of the accident in October 1996. The administrative law judge based the decision on the testimony and the records presented, finding that Dr. Laseter's medical opinion as the treating physician was "more compelling."
¶ 15. The Mississippi Workers' Compensation Commission reversed the opinion of the administrative law judge. The Commission apparently gave no consideration to Dr. Laseter's opinion and stated that "at no time after being taken off work by Dr. Laseter did claimant attempt to find employment." The Commission's decision seems to have been completely based on Tingle's opinion that there was "a possibility" that Stewart could work in sedentary employment, although this possibility was not included in Dr. Laseter's deposition or medical notes.
¶ 16. The circuit court affirmed the Commission's order with little comment.

STANDARD OF REVIEW
¶ 17. An appellate court must defer to an administrative agency's findings of fact if there is even a quantum of credible evidence which supports the agency's decision. Hale v. Ruleville Health Care Center, 687 So.2d 1221, 1224 (Miss. 1997). "This highly deferential standard of review essentially means that this Court and the circuit courts will not overturn a Commission decision unless said decision was arbitrary and capricious." Id. at 1225; Georgia Pacific Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991).
*180 ¶ 18. The supreme court has held:
We do not sit as triers of fact; that is done by the Commission. When we review the facts on appeal, it is not with an eye toward determining how we would resolve the factual issues were we the triers of fact; rather, our function is to determine whether there is substantial credible evidence to support the factual determination by the Commission.
South Central Bell Telephone Co. v. Aden, 474 So.2d 584, 589 (Miss.1985). Stated differently, this Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of evidence. Myles v. Rockwell Int'l., 445 So.2d 528, 536 (Miss.1984) (citing Masonite Corp. v. Fields, 229 Miss. 524, 91 So.2d 282 (Miss. 1956)); Riverside of Marks v. Russell, 324 So.2d 759, 762 (Miss.1975). An appellate court may not reweigh the evidence and substitute its decision for that of the Commission. Indeed, this Court has a duty to defer to the Commission when its decision can be supported. Fought v. Stuart C. Irby, Co., 523 So.2d 314, 317 (Miss.1988).
¶ 19. This is one of those rare cases where we cannot find sufficient support for the Commission's findings and are compelled to remand with directions to adopt the findings of the administrative law judge.

ISSUES AND ANALYSIS

1. WHETHER THE COMMISSION'S DECISION WAS BASED ON UNSUPPORTED OPINION
¶ 20. The appellant first argues that the Commission improperly relied on the opinion of Leon Tingle which incorrectly stated that Dr. Laseter found that Stewart could work at a sedentary level.
¶ 21. The opinion of Mr. Tingle (with emphasis added) was that
Dr. Laseter indicated that he felt that Ms. Stewart was totally and permanently disabled and would not be able to return to work in any type of capacity. Later in his deposition, Dr. Laseter was open to the possibility that Ms. Stewart may be able to perform some positions that are sedentary in nature.
Tingle went on to say that
Ms. Stewart is severely limited in her return to work options at this particular time. Additionally, as mentioned earlier in this report, Dr. Laseter indicated in his deposition that he felt Ms. Stewart was totally and permanently disabled from any employment. However, he did indicate that there was a possibility she may be able to perform some sedentary level jobs. If this is the case, Ms. Stewart's future employment options will involve a very narrow range of skilled sedentary jobs.
Tingle's assessment of Stewart was based on a single meeting with her on October 8, 2001, and also on the deposition of Dr. Laseter. On November 9, 2001, Tingle submitted to Dr. Laseter a number of job descriptions for sedentary work for Stewart. Dr. Laseter disapproved of all the job descriptions as unsuitable for Stewart.
¶ 22. In his deposition, Dr. Laseter stated the following:
Q. Are you of the opinion that Ms. Stewart is entitled to a permanent impairment rating? And if so, what would it be that can be stated with a reasonable degree of medical probability?
And I am talking about an anatomical rating.
Q. Are you of the opinion that she would be entitled to a 
A. Yes.

*181 Q.  permanent rating?
A. Yes.
Q. Okay. And that would be a result of her historical work injury?
A. Yes, sir.
. . .
Q. And in that letter [dated May 7, 2000], you state in the second to the last paragraph that you feel that Janie is totally and permanently disabled and will not be able to return to work in any type of work capacity. Is that correct?
A. Yes.
Q. And as we sit here today, do you continue to be of that opinion, and is that opinion stated within a reasonable degree of medical certainty?
A. Yes, sir.
. . .
Q. And are you of the opinion that her condition and injuries are permanent in nature?
A. Yes.
. . .
A. Well, any  any activity made her pain worse and continued to flare up her condition. So with activity on a regular basis, she just continued to have problems with pain. And it is my opinion that she could not continue that activity on a regular basis.
When questioned, Dr. Laseter stated that prior to Stewart being taken off work he had suggested part-time duties, sedentary work and the hospital had refused and not been able to guarantee such work. He specifically stated, "She could not work eight hours a day." When asked if she would progress to the point where she could do full-time work, Dr. Laseter said, "No."
Q. Okay. Would it be fair that you'd like to see  if we could find something and do that  to try it out and see if she could do it based on, you know 
A. Like I say, we've already entertained this. We'd done this approximately a year ago. And the response from the hospital was there's not a position for her, that she would have to have her full duties, she would have to be pulled to the floor if necessary and do medium work. And I didn't think the patient was  was able to do that.
And I have  I offered that over a year ago. And since that time, the patient has continued to work against my recommendations, she's in the position that we're in now where she's, you know, completely off work and  disabled at this point.
¶ 23. For the Commission to rely on the overly optimistic interpretation by Tingle of Dr. Laseter's deposition was clearly erroneous, particularly in light of Tingle's inability to find a single job description that met with Dr. Laseter's approval. Tingle's opinion was based on a single interview with Stewart, compared to that of a treating physician who steadfastly stated that Stewart was permanently disabled. Dr. Laseter did not change his opinion that Stewart was totally disabled and should not remain at work.
¶ 24. The Commission's statement that "Employer at all time maintained a position at the Singing River Hospital which met the claimant's restrictions and limitations" is directly contradicted by the deposition testimony of Dr. Laseter and not supported by the opinion and job descriptions proposed by Tingle or any other evidence. Consistent with Dr. Laseter's deposition testimony, Tingle noted twice in his opinion that Dr. Laseter found that Stewart was totally and permanently disabled *182 and would not be able to return to work in any type of capacity. Any other conclusion that there was other employment available to Stewart was purely based on hypothetical speculation.
¶ 25. In Burnley Shirt Corporation v. Simmons, 204 So.2d 451, 453 (Miss.1967), the court specifically stated that recovery in a compensation case must be based on probabilities, rather than "predicated only upon a possibility." The court quoted Franks v. Goyer, 234 Miss. 833, 839, 108 So.2d 217, 219 (1959):
Long before Mississippi had a Workmen's Compensation Law, this Court has repeatedly held that recoveries must rest upon reasonable probabilities and not upon mere possibilities. See Illinois Central Railroad Company v. Cathy, 70 Miss. 332, 12 So. 253; Kramer Service, Inc. v. Wilkins, 184 Miss. 483, 186 So. 625; Tombigbee Electric Power Association v. Gandy, 216 Miss. 444, 62 So.2d 567, and the long list of like cases cited in 216 Miss. at page 456, 62 So.2d at page 571.
Burnley Shirt Corporation, 204 So.2d at 454. Because Tingle stated that employment for Stewart was "a possibility" or "the possibility," then it was error for the Commission to use that statement as a basis for its decision.
¶ 26. The only time that the hospital announced that a position was available was at the hearing before the administrative law judge. We reject the notion that a job can be offered solely for the purpose of attempting to defeat a claim or extended out of sympathy. See McCray v. Key Constructors, Inc., 803 So.2d 1199, 1202(¶10) (Miss.Ct.App.2000). Further, when that position was subsequently forwarded to Dr. Laseter, he rejected it as inappropriate for Stewart.
¶ 27. We find that this assignment of error has merit.

2. WHETHER THE COMMISSION'S DECISION IS IN CONFLICT WITH MISSISSIPPI LAW
¶ 28. As part of its findings, the Commission stated that "the overwhelming weight of the medical evidence suggests that prior to the motor vehicle accident, claimant had been seen by two well respected physicians practicing on the Mississippi Gulf Coast area and neither Dr. McCloskey nor Dr. Terry Smith opined that the claimant was unable to work."
¶ 29. Dr. McCloskey first saw Stewart on February 4, 1997. He later performed surgery and released Stewart to work part-time with restrictions on August 18, 1997. On September 29, 1997, Dr. McCloskey found maximum medical recovery and assigned a ten percent (10%) permanent impairment to the whole body. In August 1998, Stewart asked for a referral to Dr. Laseter.
¶ 30. On December 21, 1998, Stewart first saw Dr. Laseter, a pain management specialist, on referral from Dr. McCloskey. Stewart saw Dr. Laseter at least sixteen times between December 1998 and May 2001. On September 6, 2000, Dr. Laseter took Stewart off work. Stewart thereafter took medical retirement and applied for and received Social Security disability benefits.
¶ 31. On or about October 23, 2001, Dr. Terry Smith provided an independent medical examination. He was hired by the employer and carrier to prepare his medical report and noted that he thought that her reasons for stopping work were "more psychological than physical." Dr. Terry Smith's curriculum vitae does not indicate that he had particular training in psychological evaluation. When Stewart was seen by other doctors with specific training in psychology/psychiatry  Dr. Steve *183 Smith, a psychologist, and Dr. William Smith, a psychiatrist, both physicians diagnosed Stewart as having a depressive disorder secondary to chronic pain. In other words, the two medical professionals trained to deal in psychological evaluation found that Stewart's pain was the primary problem.
¶ 32. The opinion of the Commission recognized that there was no dispute as to the October 31, 1996 injury "nor is there any dispute that the motor vehicle accident of October 21, 1999 exacerbated the symptoms that the claimant suffered as a result of the work related injury. . . ." With this the Commission then turned solely to the medical evidence from Dr. McCloskey, who last saw and treated Stewart more than two years before the auto accident. The Commission's opinion incorrectly stated that Dr. Terry Smith saw Stewart "prior to the motor vehicle accident" rather than two years after the accident. The opinion also failed to note that Dr. Terry Smith was hired by the employer/carrier to perform this evaluation. In argument before the Court, it was noted that neither Dr. McCloskey nor Dr. Terry Smith was aware that Stewart had been involved in the October 1999 accident.
¶ 33. The brief of the appellee fails to address the issues raised by Stewart in this assignment of error. Rather, the appellee argues that the Commission determined that the October 1999 auto accident was a subsequent intervening accident which terminated any further liability of the employer and carrier. As previously quoted, the Commission found, without any contradiction, the accident exacerbated Stewart's condition. There was no finding that the employer was not liable for Stewart's condition at the time of the hearing. In argument before the Court, the appellee conceded that the Commission did not make a specific finding that the 1999 accident was an intervening cause which absolved the employer of responsibility. It was also noted that the issue of intervening cause was not an issued raised by the appellees before the Commission.
¶ 34. In Marshall Durbin Co. v. Warren, 633 So.2d 1006, 1010 (Miss.1994), quoting Johnson v. Ferguson, 435 So.2d 1191, 1195 (Miss.1983), the court held that expert testimony based on an inadequate or incomplete examination does not carry as much weight and has little or no probative value compared to the opinion of an expert who made a thorough and adequate examination.
¶ 35. In his deposition testimony, taken November 9, 2001, Dr. McCloskey stated that he was not giving any opinion as to Stewart's condition from any time after he last saw her on February 17, 1998. He specifically stated that Dr. Laseter would be in a better position to give an evaluation and opinion as to her condition. Dr. McCloskey also noted that Dr. Laseter's opinion would probably be better than that of someone who had only seen Stewart once for an independent medical examination.
¶ 36. In Johnson v. Ferguson, 435 So.2d 1191, 1193-95 (Miss.1983), the Mississippi Supreme Court held that the decision of the Commission was against the overwhelming weight of the evidence when it disregarded the testimony of the claimant's treating physician and instead relied on the employer's expert. In addition to citing Ferguson, this Court in Clements v. Welling Truck Service, Inc., 739 So.2d 476, 478 n. 1, cited Larson's Workers Compensation Law § 80.24(b) n. 83.1, for noting that Ferguson is "one of many cases standing for two `self evident propositions' that treating physicians' opinions carry more weight than those of physicians who examine a claimant solely for purposes of testifying and opinions of treating specialists *184 carry more weight than those of general practitioners." Accord, South Central Bell Telephone Co., v. Aden, 474 So.2d 584, 593 (Miss.1985).
¶ 37. Consistent with case law, we find that the Commission incorrectly relied on the opinion of Dr. McCloskey, who clearly stated that he could offer no opinion on Stewart's present condition and who had not treated her for more than two years prior to his testimony, and on the opinion of Dr. Terry Smith who reviewed some of Stewart's medical records for purposes of testifying for the employer/carrier. Again, we find that there is merit to the appellant's issue.

3. WHETHER THE COMMISSION'S DECISION IS CLEARLY ERRONEOUS AND INCORRECT FOR FAILING TO CONSIDER STEWART'S PAIN
¶ 38. In this assignment of error, the appellant faults the Commission's opinion for failing to note that Stewart still experiences pain and has been in pain for some period of time. In Spann v. Wal-Mart Stores, Inc., 700 So.2d 308, 312(¶15) (Miss.1997), the court stated that if the claimant is "still suffering from and being treated for pain, immobility and inability to perform all but the slightest duties, then it logically follows that he has some temporary or permanent disability."
¶ 39. The Commission's primary holding in its opinion was that Stewart was under a duty to seek employment despite the fact that her treating physician had stated that she was totally disabled and had taken her off work. In order for Stewart to seek employment she would have had to go directly against medical advise. The hospital's statement at the hearing that there was a job available which met the medical restrictions is directly in conflict with the testimony of Dr. Laseter that he had contacted the hospital about alternative employment and that the hospital had not been cooperative or offered any such employment. Each of the attempts by Tingle to find other related employment was specifically rejected by Dr. Laseter, including the alleged job of patient educator that the hospital stated met the medical limitations.
¶ 40. While the Commission is correct that "neither Doctor McCloskey nor Dr. Terry Smith (the IME physician) opined that the claimant was unable to work," neither of these doctors had current or complete information about Stewart's condition. Dr. McCloskey had not seen or evaluated Stewart in more than two years at the time of his deposition and was not aware of the additional exacerbation of her injury brought on by the automobile accident or her otherwise declining health. Dr. Terry Smith did not review all of Stewart's medical information, was equally unaware of Stewart's additional automobile injury, and seemingly offered an opinion outside his area of expertise.
¶ 41. The Commission should have taken into consideration Stewart's continuing pain. After Dr. McCloskey found that Stewart had reached maximum medical improvement in September 1997, Stewart returned to work at Singing River and worked for several years. Her supervisor, Nettie Coffey, noted that Stewart was in pain, although working. Both the psychologist and the psychiatrist who treated Stewart noted that pain was a significant factor in her psychological problems. Dr. Terry Smith's opinion is not to the contrary. While he states that Stewart's reason for stopping work was more "psychological than physical," he offers no opinion as to the cause of her psychological problems. According to both treating physicians, pain was a significant cause. The significance of this is noted in Spann, 700 So.2d at 311-12(¶ 15):

*185 If Spann had achieved maximum medical improvement, following an injury all parties agree occurred during the course and scope of employment, then Spann should be pain free as he was prior to the accident, with full mobility, and able to return to his prior duties. If he has reached maximum improvement and is still suffering from and being treated for pain, immobility and inability to perform any but the lightest duties, then it logically follows that he has some temporary or permanent partial disability.
¶ 42. Based on uncontradicted evidence that Stewart experienced pain and the Commission's failure to recognize pain as an indicator of disability, we conclude that the decision by the Commission lacks validity and must be reversed.

4. WHETHER THE COMMISSION'S DECISION IS CLEARLY ERRONEOUS AND INCORRECT FOR FAILING TO CONSIDER STEWART'S PAIN
¶ 43. The compensability of the accident was never an issue in this case. The appellee has not challenged that the October 1996 injury was compensable. Whether Stewart is entitled to continued medical treatment has also not been seriously contested. The parties stipulated that the only issue to be resolved was "the existence and extent of any permanent disability and the loss of wage earning capacity attributable to the Claimant's injury."
¶ 44. The Commission's opinion that "the findings of the Commission be substituted for those of the Administrative Judge and that the workers' compensation claim of the claimant, Janie Stewart, be, and the same hereby is DENIED," is inadequate and further evidences that the Commission's holding is clearly erroneous and cannot be upheld.

CONCLUSION
¶ 45. The long-standing rule of the courts is that doubtful cases must be resolved in favor of compensation, so as to fulfill the beneficent purposes of the statute. Marshall Durbin, 633 So.2d at 1010; Clements, 739 So.2d at 481(¶ 21). We conclude that the Commission erred in both its findings of fact and in its legal conclusions. Stewart had a right to rely on her treating physician's conclusion that there were no jobs which met her limitations and that she was totally disabled as a result of her compensable injury. Dr. McCloskey deferred to Dr. Laseter's findings based on the fact that Dr. McCloskey had not seen the claimant for more than two years. The one-time evaluations by Dr. Terry Smith and Leon Tingle, paid for by the employer, were either based on incomplete information or were so speculative as to be of questionable value to the Commission.
¶ 46. In particular, the Commission applied the wrong legal standard. When a claimant has been removed from work and declared totally disabled based on competent medical evaluation, there is no requirement that the claimant go against medical advise and seek employment. If the employer seeks to challenge the claim of total occupational disability, then the employer must come forward with testimony showing that the claim is invalid. While Tingle mentioned the "possibility" of other employment, each of his job descriptions was rejected by Stewart's doctor, including the position which the hospital claimed to have open.
¶ 47. Our limited appellate review leads to the inescapable conclusion that the finding of the Commission is without support and therefore arbitrary and capricious. We reverse and remand this matter to the Commission for a determination of the appropriate award of compensation.
*186 ¶ 48. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLEES.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. ISHEE, J., NOT PARTICIPATING.