962 So.2d 146 (2007)
Sylvia McGhee RICHARDSON, Appellant
v.
JOHNSON ELECTRIC AUTOMOTIVE, INC., and Zurich American Insurance Company, Appellees.
No. 2006-WC-01598-COA.
Court of Appeals of Mississippi.
August 7, 2007.
*147 Lawrence J. Hakim, Batesville, attorney for appellant.
Joseph T. Wilkins, Jackson, attorney for appellees.
Before KING, C.J., IRVING and ROBERTS, JJ.
ROBERTS, J., for the Court.

STATEMENT OF THE CASE
¶ 1. This workers' compensation action began when Sylvia McGhee Richardson was injured while working at Johnson Electric Automotive, Inc., when the chair she was sitting in rolled out from under her and she fell to the ground. She subsequently filed a petition to controvert on August 13, 2001, claiming disability from injuries to her lower back, neck, left upper extremity, left hip and right knee. However, Johnson Electric would only admit that Richardson's injuries to her left upper extremity and left hip were compensable. Following a trial on the matter, the administrative law judge found that Richardson failed to prove disability. This decision was affirmed by the Full Commission and Circuit Court of Lowndes County. Richardson now appeals to this Court. Finding no error, we affirm.

FACTS
¶ 2. Richardson began working for Johnson Electric in February of 1973, and in 1996 she sustained an injury while at work, which was the subject of a separate workers' compensation claim. As a result of this accident, Richardson injured her left hand, arm and shoulder and initially received treatment from Dr. Joe Hillman. She eventually underwent surgery by Dr. Alan Freeland for her injuries in March 1999. Dr. Freeland would subsequently determine that Richardson reached maximum medical improvement on September 9, 1999, and released her to return to work with restrictions. Richardson then applied for Social Security disability benefits as she was unable to work within Dr. Freeland's restrictions, and in a March 18, 2000 letter from the Social Security Administration (SSA) she was informed that it found her date of disability to be September 25, 1998. Pursuant to SSA guidelines, she began receiving disability payments in March of 2000, and was still receiving payments from the SSA at the time of trial. However, after Johnson Electric consulted with a vocational expert it was able to *148 provide Richardson with a job she could perform within her restrictions, and she returned to work in January of 2000. This workers' compensation claim would later be settled on July 25, 2000.
¶ 3. Richardson was referred to Dr. James McAfee for evaluation of her 1996 injury and she first saw him the morning of January 26, 2000, the day of her injury that gave rise to the current cause of action. Dr. McAfee's notes indicate that Richardson complained of continued pain in her right upper extremity, and he prescribed a splint for her right arm.[1] However, Dr. McAfee's records reveal no complaints of pain in her back or neck. In light of Richardson's continued complaints of pain, during a follow up visit on February 16, 2000, Dr. McAfee ordered a nerve conduction study and EMG of her right upper extremity. Richardson failed to keep her appointment for the nerve conduction study and EMG, as well as follow up therapy visits ordered by Dr. McAfee. As a result, she was discharged from his care on February 21, 2000.
¶ 4. Richardson's new job with Johnson Electric required her to sit in a high chair with rollers and on January 26, 2000, approximately two or three weeks after she went back to work, the chair rolled out from underneath her causing her to fall approximately thirty inches. As a result of her prior injuries, both of Richardson's arms were in splints. She landed on her back, left hip and left elbow when she fell, and was taken to the emergency room at Baptist Memorial Hospital in Columbus soon after the accident. The emergency room report indicates that Richardson complained of pain in her left arm and left hip when she arrived. She testified during the hearing in front of the administrative law judge (ALJ) that the following day she complained of pain in her neck, shoulders and lower back to her supervisor, who then set an appointment for Richardson to see Dr. Hillman that day. Richardson testified that during this initial consultation she complained of pain in her left elbow, left hip and lower back. However, Dr. Hillman's records show no mention of a complaint of back pain or neck pain on January 27, 2000. Dr. Hillman's records did not show a complaint of neck pain until September 2000. Dr. Hillman saw Richardson on several occasions throughout the next three years and served as Richardson's only source of medical testimony relating to her claims of injury resulting from the January 26, 2000 accident.
¶ 5. Richardson testified that she saw Dr. Christopher Moon, a podiatrist, for pain and swelling in both her feet on May 31, 2001. That day, he prescribed a walking cast for her right foot which she wore for approximately two weeks. She testified that roughly a month after she removed the cast she was exiting her front door and fell.[2] Richardson stated that she lost feeling in her right leg and her back gave out causing her to fall on her knees in her yard. However, during her deposition she stated that her left leg gave out and she landed on rocks. Her knees began to swell and, because Dr. Hillman was unavailable at this time, she contacted Dr. Michael Pomphrey, an orthopedic surgeon. She testified that Dr. Pomphrey performed knee surgery in July and August of 2001.
¶ 6. Dr. Pomphrey testified during his deposition that he first saw Richardson on July 3, 2001, for complaints of right foot pain, right knee pain and right hip pain. *149 According to Dr. Pomphrey, she did not give any specific history concerning how she may have injured herself and only mentioned prior treatment from Dr. Freeland. Additionally, he stated that she vaguely remembered a fall, but stated that she claimed that she caught herself before hitting the ground. Dr. Pomphrey testified that he performed knee surgery on Richardson's right knee on July 27, 2001, and on her left knee on August 27, 2001. During a pre-surgery consultation prior to the August 27, 2001 surgery, Richardson indicated that she remembered falling in June. However, Dr. Pomphrey testified that Richardson never mentioned any neck or back pain during the time he was treating her from July 2001 to November 2001.
¶ 7. At the request of Johnson Electric, Richardson was examined by Dr. Howard Katz on October 28, 2002. In preparation of his report, Dr. Katz reviewed records from every physician who examined Richardson for back, neck,[3] upper extremity or lower extremity complaints since 1993. Subsequent to reviewing Dr. Katz's twenty-two page report, the ALJ found that,
it was Dr. Katz's opinion, in essence, that Ms. Richardson may have temporarily aggravated a preexisting lumbar condition of long standing when she fell on January 26, 2000; that even if she did suffer an aggravation on that date, she had reached maximum medical improvement from any such aggravation by March of 2000; and that there was no way to determine to a reasonable degree of medical probability what caused either of the claimant's reported falls in 2001.
¶ 8. Richardson testified that her left knee was still troublesome and she would later have another surgery on it in Birmingham, Alabama by Dr. Lauren Savage, an orthopedist. As noted by the ALJ, there is no mention of any falls, of any back pain, or of any neck pain throughout Dr. Savage's records pertaining to Richardson. Additionally, Dr. Gene Watterson, an internist and rheumatologist, saw Richardson on referral from Dr. Savage. He stated during his deposition that Richardson made no mention of back or cervical pain. Also, his physical examination of Richardson on January 28, 2003, revealed that her neck was supple and non-tender.

PROCEDURAL HISTORY
¶ 9. Richardson filed her petition to controvert on August 13, 2001, claiming injury to her lower back, neck, left upper extremity, left hip and right knee. However, Johnson Electric admitted that Richardson sustained an injury only to her left elbow and left hip. A hearing was held in Columbus on August 17, 2004. In an order filed April 18, 2005, the ALJ found that Richardson failed to support her claim with sufficiently reliable medical findings to be entitled to disability benefits. However, the ALJ stated that there was no question Richardson suffered an injury to her left hip and left elbow as a result of the January 26, 2000 accident, and determined that she reached maximum medical recovery in March of 2000. As such, the ALJ held that Richardson was entitled to all medical services and supplies provided and prescribed by Dr. Hillman from January 27, 2000, through the last day of February 2000. Richardson then appealed the ALJ's order to the Full Commission, and it summarily affirmed the ALJ on February 17, 2006. Following the Commission's affirmance, Richardson appealed to the Circuit Court of Lowndes County. In an order filed September 7, 2006, the circuit *150 court affirmed the Commission's decision. From this order, Richardson now appeals to this Court.

STANDARD OF REVIEW
¶ 10. The Commission sits as the finder of fact and its findings are entitled to substantial deference. Raytheon Aero. Support Servs. v. Miller, 861 So.2d 330(¶ 11) (Miss.2003). As a reviewing court, we may only interfere with the Commission's findings if they are arbitrary and capricious. Id. at (¶ 9). Where the decision of the Commission is supported by substantial evidence, there can be no finding of arbitrariness and caprice. Id. Additionally, "the Commission is also the ultimate judge of the credibility of witnesses." Barber Seafood, Inc. v. Smith, 911 So.2d 454(¶ 27) (Miss.2005). "Further, neither this Court nor the Mississippi Supreme Court is empowered to determine where the preponderance of the evidence lies when the evidence is conflicting. Instead, this Court must affirm the decision of the Commission where substantial credible evidence supports the Commission's order." Id. (citations omitted).

ANALYSIS
I. WHETHER THE ALJ WAS REQUIRED TO GIVE DR. HILLMAN'S OPINIONS CONTROLLING EVIDENTIARY WEIGHT.
¶ 11. Richardson cites S. Cent. Bell Tel. Co. v. Aden, 474 So.2d 584 (Miss. 1985) in support of her argument that controlling weight should have been given to the opinions and testimony of her treating physician, Dr. Hillman, rather than to Dr. Katz, who only saw her once. In Aden, the Commission was presented with, among other testimony and evidence, the testimony of the claimant's treating physician, Dr. Raymond Browning, and the testimony of Dr. Buford Yerger, who conducted an initial evaluation at the time of the claimant's injury and an independent evaluation for the employer prior to Aden's hearing. Aden, 474 So.2d at 587-88. In affirming the decision of the Commission, the supreme court stated that,
We regard the testimony of Dr. Yerger vis-a-vis the testimony of Dr. Browning as each constituting admissible medical opinions which were submitted to the triers of the facts, the members of the Mississippi Workmen's Compensation Commission. The Commission was charged with the responsibility under our law for weighing and evaluating this testimony and all other testimony before it and making a finding. The net effect of the Commission's fact finding in this regard was that Dr. Yerger's testimony was simply not credible. The fact that it was admissible testimony and the fact that Dr. Yerger examined the claimant last in no way serves to undercut the Commission's finding.
Id. at 593. The supreme court's holding in Aden does not stand for the proposition that the Commission must give greater or controlling weight to a claimant's treating physician's opinion. Only that it may do so within its "responsibility under our law for weighing and evaluating . . . all . . . testimony before it and making a finding."
¶ 12. Additionally, Richardson cites Mueller Copper Tube Co., Inc. v. Upton, 930 So.2d 428 (Miss.Ct.App.2005) and Stewart v. Singing River Hosp. Sys., 928 So.2d 176 (Miss.Ct.App.2005) in further support of her argument. Again, these cases do not show that the Commission must abide by a treating physician's opinion. In Upton, the ALJ was presented with the testimony of Dr. Robert Christopher, the claimant's treating physician, which was contradictory to the opinions of two other doctors. Upton, 930 So.2d at (¶ 35). The ALJ resolved the conflict by *151 giving greater weight to Dr. Christopher's testimony as he was the treating physician. Id. In affirming this decision, this Court cited Aden and stated, "[t]he Workers' Compensation Commission is entitled to favor the testimony of a treating physician over a physician who had seen the claimant only once." Id. (emphasis added). Noticeably absent from this holding is that the Commission is required to favor the testimony of a treating physician.
¶ 13. The same can be said from a close reading of Stewart. In Stewart, this Court reversed the decision of the Commission as it failed to consider the opinions of the claimant's treating physician. Stewart, 928 So.2d at (¶ 37). The claimant in Stewart was injured at work in October 1996, and was involved in an automobile accident three years later that further complicated her injuries. Id. at (¶¶ 4, 11). After her 1996 injury, Stewart initially saw Dr. Steven Fineburg, her family physician, but was subsequently referred to Dr. John McCloskey, a neurosurgeon. Id. at (¶ 5). Dr. McCloskey treated Stewart for several months and in September 1997 allowed her to return to work with some restrictions, and found that she had reached maximum medical recovery. Id. at (¶¶ 7, 29). Stewart worked for several months, but continued to experience pain. Id. at (¶¶ 8-9). In August 1998, Stewart requested a referral to Dr. Jeffery Laseter, who diagnosed her with post-laminectomy syndrome after his initial consultation in December 1998. Id. at (¶ 10). Several months after the 1999 accident, Dr. Laseter took Stewart off work again because of her pain, and, after numerous subsequent follow-ups, he stated that she had reached maximum medical improvement on November 17, 2000. Id. at (¶¶ 11-12). Based in large part upon the testimony of Dr. Laseter, who had been deemed Stewart's treating physician, "[t]he administrative law judge found that Stewart had suffered a compensable injury, was entitled to continuing reasonable and necessary medical services relating to the injury, and was permanently and totally disabled as a result of the accident in October 1996." Id. at (¶ 14). On appeal to the Commission, it reversed the ALJ's decision "apparently gave no consideration to Dr. Laseter's opinion." Id. at (¶ 15).
¶ 14. This Court noted that the Commission found no dispute as to whether Stewart was in a work-related accident nor that the 1999 accident exacerbated her injuries suffered from her work-related accident. Id. at (¶ 32). With this, the Commission made its decision based upon the opinions of Dr. McCloskey and Dr. Terry Smith, who performed an independent medical evaluation on or about October 23, 2001, at the request of the employer. Id. at (¶¶ 31-32). This Court noted that Dr. McCloskey had not seen Stewart since February 17, 1998, and that he stated in his deposition that Dr. Laseter would be in a better position to give an opinion on Stewart's current condition. Id. at (¶ 35). Additionally, it was noted that Dr. Smith believed that Stewart's reasons for not working were "more psychological than physical." Id. at (¶ 31). However, his curriculum vitae did not indicate any training in psychological evaluation, and "two [other] medical professionals trained to deal in psychological evaluation found that Stewart's pain was the primary problem." Id. In light of the foregoing, the facts that Dr. McCloskey had not seen Stewart for two years prior to his testimony, and that Dr. Smith had not reviewed Stewart's complete history, and neither physician was aware of Stewart's 1999 accident, we found that the Commission incorrectly relied on Drs. McCloskey's and Smith's opinions over that of Dr. Laseter. Id. at (¶ 37). While it is clear that the fact that Dr. Laseter was Stewart's treating physician *152 factored into our decision, it was not the sole factor considered. When compared against the opinion of Dr. Laseter, the opinions of Drs. McCloskey and Smith were obviously lacking.
¶ 15. The recent supreme court case of Hardaway Co. v. Bradley, 887 So.2d 793 (Miss.2004) also supports the proposition that the Commission is not required to follow a treating physician's opinion. While the issue in Hardaway was whether a certain medical procedure was reasonable and necessary, its logic holds true for the issue currently before this Court. The Commission in Hardaway was presented with the testimony of two doctors, one of whom was hired by the employer, that the requested procedure was not reasonable and necessary and the testimony of the claimant's treating physician who claimed that it was. Hardaway Co., 887 So.2d at (¶¶ 14). In spite of the treating physician's opinion, the Commission determined that the procedure was not needed. Id. at (¶ 10). This decision was reversed by the circuit court, and the circuit court's decision was subsequently affirmed by this Court. Id. at (¶ 1). We reasoned that so long as a treating physician deemed a particular treatment as reasonable and necessary, the employer and carrier were obliged to provide it. Id. at (¶ 18) (quoting Hardaway Co. Bradley, 887 So.2d at (¶ 21)). In reversing this Court and reinstating the decision of the Commission, the supreme court stated that the two opposing physicians' opinions provided the substantial evidence needed to uphold the Commission's decision. Id. at (¶ 16). Additionally, the supreme court indicated that to find that the Commission is required to always comply with a treating physician's opinion would be contrary to Mississippi Workers' Compensation Laws. Id. at (¶ 19); see also Miss.Code Ann. § 71-3-15 (Rev.2000).
¶ 16. In light of Aden, Upton, Stewart and Bradley, it is clear that, while a treating physician's opinion is without question of great import, the Commission is not required to abide by it or required to give it any greater weight than other physicians' opinions. It is the sole responsibility of the Commission to determine the credibility of the witnesses before it and, when conflicts in credible evidence arise, to determine where the preponderance of the evidence lies. Regardless of whether the Commission makes the decision to rule in line with a treating physician's opinion, we must affirm its decision so long as it is supported by substantial evidence.
II. WHETHER THE FINDINGS OF THE COMMISSION WERE SUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 17. Dr. Hillman testified that it was his opinion based upon a reasonable degree of medical certainty that Richardson was permanently disabled as a result of the injuries sustained on January 26, 2000. After reviewing Richardson's medical history and conducting an independent examination, Dr. Katz noted Richardson's long history of lumbago without neurologic deficit. He concluded, based upon a reasonable degree of medical certainty, that Richardson reached maximum medical improvement of any exacerbation of her existing lumbago condition by March 2000. Additionally, Dr. Katz stated that the causes of her falls from the front and back of her home could not be determined to a reasonable degree of medical certainty. Finally, he stated that Richardson's problems of lumbago existed prior to January 26, 2000, and could not be assigned to any particular fall or injury. As to Richardson's claims of disability pertaining to her right knee and lower back, we cannot say that the Commission's decision was not supported by substantial evidence. However, *153 Dr. Katz's report failed to comment on Richardson's cervical complaints.
¶ 18. Johnson Electric's failure to introduce medical testimony concerning Richardson's neck injury notwithstanding, we must still affirm the Commission's decision. In the case sub judice, the Commission found Dr. Hillman's testimony regarding Richardson's alleged disabilities related to her work-related accident on January 26, 2000 less than credible as the ALJ noted "a combined reading of [Dr. Hillman's] deposition and his records reveals such a confusing array of discrepancies, contradictions and misstatements that the evidence is effectively unuseable in attempting to arrive at a rational disposition of this case." The ALJ further explained:
[Dr. Hillman] testified that the claimant injured her cervical spine in the subject accident and that this prompted him to recommend a cervical MRI, but he had recommended a cervical MRI for the claimant on January 13, 2000, 13 days prior to the subject accident; he first testified that Ms. Richardson injured her cervical spine in the subject accident by reaching out to catch herself with her right arm as she fell, but then a few pages later he stated that she is [sic] injured her neck when she reached out to catch herself with her left arm; each of the preceding statements is at odds with the history the claimant gave to Dr. Hillman on January 26, 2000 that she was unable to catch herself as she fell because each of her arms was in a splint at the time, and the only time in the record the claimant ever mentions trying to reach out and catch herself as she fell is in regard to the reported fall down the steps in June of 2001; Dr. Hillman testified that on both September 7, 2000 and April 18, 2001 the claimant exhibited left hand symptoms compatible with radiculopathy from the eighth cervical (C-8) nerve, yet his own office note of April 18, 2001 mentions right hand pain and right-sided C-8 radiculopathy, and then a cervical MRI performed on April 25, 2001 revealed left-sided disc bulges and foraminal stenosis at the C4-5 and C5-6 levels, from which levels any nerve root irritation would have become manifest in the left shoulder or left upper arm, not in either of the hands; and, Dr. Hillman stated unequivocally that a complaint of left hip pain is the same thing as a complaint of lumbo-sacral pain, a pronouncement contrary to even the limited amount of medical knowledge the undersigned has been able to accumulate during seven years in this job.
(internal citations omitted). While Dr. Hillman did not claim Richardson reached out with her right hand in an effort to stop herself from falling, the ALJ's remaining observations arguably hold true. Dr. Hillman stated that it was his opinion that Richardson injured her neck when she "tried to grab herself and catch herself from falling . . . that's when I think she popped her neck." As identified by the ALJ, there is simply no evidence that Richardson reached out in an attempt to catch herself other than his deposition testimony, which is at odds with his medical records from that day and Richardson's own testimony. Additionally, both of Richardson's arms were in splints at the time of the accident. While this surely would not make it impossible for her to reach out in an attempt to catch herself, it does cast further doubt upon Dr. Hillman's stated trigger of Richardson's alleged neck injury.
¶ 19. "In order to establish a prima facie case of disability, a claimant must show by a fair preponderance of the evidence (1) an accidental injury; (2) arising out of and in the course of employment; and (3) a causal connection between *154 the injury and the claimed disability." Mabry v. Tunica County Sheriff's Dep't, 911 So.2d 1038(¶ 13) (Miss.Ct.App.2005). Unless common knowledge suffices, "the claimant must prove the causal connection between the alleged injury and the alleged disability by competent medical proof." Sonford Products Corp. v. Freels, 495 So.2d 468, 471 (Miss.1986) overruled on other grounds by Bickham v. Dep't. of Mental Health, 592 So.2d 96 (Miss.1991); see also Franks v. Foam Craft, 929 So.2d 350(¶ 13) (Miss.Ct.App.2006). As noted by the ALJ, "Dr. Hillman is the sole source of medical testimony relating to the claimant's alleged disabilities. . . ." Without the benefit of competent medical proof Richardson cannot meet her burden of showing a causal connection between her fall and her alleged injuries. Therefore, her claim must fail.
III. WHETHER THE COMMISSION'S DECISION IN COLEBROOK V. JOHNSON ELECTRIC AUTOMOTIVE IS PROOF THAT THEIR DECISION IN THE INSTANT CASE WAS ARBITRARY AND CAPRICIOUS.
¶ 20. Colebrook is a recent workers' compensation case in which the Commission reversed the decision of the ALJ on April 5, 2006. While there are factual similarities between Colebrook and the case sub judice, a detailed account is unnecessary. Colebrook involved a different claimant, different facts and a different ALJ. While Dr. Hillman and Dr. Katz were involved in both claims, Dr. Hillman's testimony and opinions were not found to be credible in the instant case. The Commission is charged with the responsibility of making a case-by-case credibility determination of the witnesses before it. Sealed Power Corp. v. Young, 744 So.2d 813(¶ 16) (Miss.Ct.App.1999). As a result of discrepancies in Dr. Hillman's testimony and records in the case before us, which was apparently absent in Colebrook, the Commission found his testimony and opinions to be not credible and unusable in its determination of disability. As such, this issue is without merit.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
NOTES
[1] Richardson already had a splint on her left arm from a previous injury.
[2] During her deposition Richardson also testified that she experienced another fall down her back steps in which she broke her wrist.
[3] Dr. Robert Smith, a neurosurgeon, and Dr. Paul Veal, a chiropractor, treated Richardson for lumbar and cervical strains in 1996 and 1997 after she fell off a ladder at work.