GRIFFIS, J.,
Dissenting.
¶ 25. Respectfully, I must dissent from the majority’s decision in this case. As to the first issue, I am of the opinion that the medical evidence presented by Earnil Brown failed to show a causal connection between his mental injury and his physical injury occurring on February 11, 1999; thus, there is no substantial evidence to support the Commission’s finding that Brown is entitled to benefits for his mental injury. Accordingly, I would reverse the judgment of the circuit court and the decision of the Commission on the issue of *1097 compensation for Brown’s mental injury and render judgment in favor of Delphi Packard Electric Systems.
¶ 26. As the majority states, the ALJ found that Brown’s psychological treatment was not reasonably and necessarily related to his work injury, but the Commission reversed, finding that Brown’s mental injuries flowed from the existence of his physical injuries. In making this determination, the Commission relied upon the opinion of Dr. V. Faeza Jones, Brown’s treating psychiatrist. Dr. Jones diagnosed Brown with chronic pain syndrome and opined that this condition led to depression and psychiatric disorders. The Commission found that Dr. Jones noted evidence of Brown’s depression with psychotic behavior related to work issues.
¶ 27. Based on Dr. Jones’s opinion, the Commission held that Brown’s compensa-ble physical injury resulted in his psychological disorder; thus, his mental injury was also compensable. However, the law is clear that “a claimant asserting that a mental or nervous disease has resulted from an industrial accident must show the causal connection between the accident and the psychoneurosis by dear evidence.” Hemphill Drug Co. v. Mann, 274 So.2d 117, 120 (Miss.1973) (quoting Miller Transporters, Ltd. v. Reeves, 195 So.2d 95, 100 (Miss.1967)) (emphasis added). It is not enough to say, as the Commission did here, that because there was no history of mental injury prior to the work injury, it therefore appears that the mental injury flowed from the work injury. There was no clear evidence presented to the Commission connecting Brown’s mental injuries to his work injury on February 11, 1999. As such, there is no substantial evidence to uphold the Commission’s decision.
¶ 28. When there is no evidence to support the Commission’s finding, we do not hesitate to reverse. Foamex Prods. v. Si-mons, 822 So.2d 1050, 1053(¶ 11) (Miss.Ct.App.2002). The lack of evidence showing a causal connection between Brown’s mental injury and his physical work injury is shown by the following review of the evidence that was presented to the Commission.
¶ 29. Brown was referred to Dr. Jones in August 2000 for “psych treatment/pain management.” Dr. Jones reported that Brown was anxious, paranoid, irritable, hearing voices, and having difficulty sleeping. Dr. Jones consistently stated that these problems were secondary to the chronic pain rather than a specific accident or injury. On an insurance form completed in 2001, Dr. Jones indicated that Brown’s condition was not related to an accident; instead, it was due to chronic pain. Further, in various “To Whom It May Concern” letters written in 2002, Dr. Jones again attributed the cause of Brown’s psychological problems to chronic pain and in no way mentioned the accident on February 11, 1999. Upon review of the medical evidence, it is apparent that Dr. Jones attributed Brown’s major depressive disorder to his chronic pain; however, Dr. Jones never connected Brown’s mental disorder to his physical injury on February 11,1999.
¶ 30. The only other evidence before the Commission concerning Brown’s mental status was the medical opinion of Dr. Mark Webb, a psychiatrist who evaluated Brown at the request of Delphi Packard. Dr. Webb diagnosed Brown as suffering from major depression with psychotic features and personality disorder with histrionic and paranoid features. He concluded that Brown’s personality disorder had existed almost from childhood. Dr. Webb found that Brown’s personality disorder worked to fuel his depressive state for which he is “sort of blaming [Delphi] Packard or over-reacting.” Dr. Webb con- *1098 eluded that Brown’s psychiatric impairment was not related to his work injury on February 11, 1999. Instead, he concluded that Brown’s chronic pain was “coming from his paranoia and histrionic features” which had existed throughout most of Brown’s life.
¶ 31. Because the medical evidence presented by Brown failed to show a causal connection between his mental injury and his physical injury occurring on February 11, 1999, there is no substantial evidence to support the Commission’s finding that Brown is entitled to benefits for his mental injury.
¶ 32. I must also respectfully dissent from the majority’s second issue regarding the Commission’s finding that Brown suffered a loss of wage-earning capacity. The majority correctly cites the rule that requires a claimant to make a diligent effort to find other gainful employment before receiving total disability benefits. However, the majority finds that this case fits within an exception to this longstanding rule because Dr. Jones, Brown’s psychiatrist, considered Brown 100% disabled and unable to return to any type of work; thus, a job search was unnecessary.
¶ 33. For this proposition, the majority cites our previous holding in Stewart v. Singing River Hospital System, 928 So.2d 176, 185(¶ 46) (Miss.Ct.App.2005). However, the present case is distinguishable from the facts of Stewart. In Stewart, the Court, stating the exception to the rule, held that there was no requirement that the claimant seek out other employment when such a search was contrary to a competent medical evaluation that the claimant was totally disabled and unable to work. Id. However, the Court in SteivaH specifically stated that the compensability of the accident was never a matter of dispute in the case. Id. at (¶43). The sole contested issue was “the existence and extent of any permanent disability and the loss of wage[-]earning capacity attributable to the Claimant’s injury.” Id.
¶ 34. Here, however, Delphi Packard not only disputed the diagnosis of disability by Dr. Jones but also the mental injuries that were the basis of that diagnosis. Delphi Packard has at all times denied the compensability of Brown’s mental injuries. Delphi Packard further contested the reasonableness and medical necessity of the treatment Brown received from Dr. Jones and the causal connection between her diagnosis and Brown’s work injury of February 11, 1999. Delphi Packard did not accept the findings of Dr. Jones that Brown was unable to return to any type of work and retained its own medical expert, Dr. Webb, who concluded that Brown’s mental injuries were not work-related.
¶35. The compensability of Brown’s mental injury, which was the basis of Dr. Jones’s diagnosis that Brown is totally disabled, has been a central point of contention throughout this case. Thus, the facts here do not, as the majority suggests, neatly fall within the exception stated in Stewart. Just as I find that Brown did not provide sufficient evidence to connect his mental injuries to his compensable work injury, I also find that the diagnosis of his psychiatrist did not dissolve the requirement that Brown conduct a job search.
¶ 36. It is undisputed that Brown did not conduct any type of job search. Consequently, I find that Brown did not meet his burden of proving a loss of wage-earning capacity. Further, the Commission erred as a matter of law by holding that Brown was not required to conduct a diligent job search in order to prove total disability. Therefore, there is no substantial evidence to support the Commission’s award of permanent, total disability benefits. I would reverse the judgment of the circuit court and the decision of the Com *1099 mission on this issue and render judgment in favor of Delphi Packard.
ISHEE, ROBERTS AND CARLTON, JJ., JOIN THIS SEPARATE OPINION.