739 So.2d 476 (1999)
Jeffrey L. CLEMENTS, Appellant,
v.
WELLING TRUCK SERVICE, INC. and Continental Casualty Company, Appellees.
No. 98-CC-00570-COA.
Court of Appeals of Mississippi.
April 20, 1999.
*477 David N. Gillis, Jackson, Attorney for Appellant.
James E. Higginbotham II, Jackson, Attorney for Appellees.
BEFORE McMILLIN, C.J., KING, P.J., AND DIAZ, J.
KING, P.J., for the Court:
¶ 1. On December 8, 1994, Jeffrey L. Clements filed a petition to controvert a Workers' Compensation claim. On May 2, 1996, an administrative judge entered her order, and on October 23, 1996, the Full Commission affirmed the administrative judge's order. Clements appeals four substantive issues, asserting that the Commission erred in: 1) finding that the employer is not liable for payment of treatment provided by Dr. T.W. Talkington and Dr. S.J. Wilder, 2) finding that he does not need ongoing medical treatment, 3) he had not sustained a permanent occupational disability, and 4) erred in computing his average weekly wage.

FACTS
¶ 2. Clements was employed by Welling Truck Service, Inc. [Welling] and worked in a warehouse handling freight. On October 15, 1992, Clements injured his back while pushing a stack of freight. Although he attempted to continue working, back pain led him to seek treatment from T.W. Talkington, M.D. beginning on April 1, 1993 and continuing until March 13, 1995 when Talkington retired. Talkington's partner, S.J. Wilder, M.D., then took over treatment seeing Clements two times, on April 13th and July 13th of 1995.
¶ 3. During Talkington's last examination, on March 13, 1995, Talkington reported improvement in Clements gait, and positive test results indicating continued back impairment in both leg raise as well as Faber tests. Wilder examined Clements on April 13, 1995, and found Clements had limitations in the bending and extending his back, but he noted that Clements' condition was "unchanged in many months." Wilder prescribed no medications and concluded Clements should find a family physician nearer his home who "may be able to take care of his musculoskeletal symptoms."
¶ 4. Sidney R. Berry, M.D., performed independent examinations of Clements for the employer on October 26, 1993 and November 16, 1995. During the 1993 examination, Berry noted that Clements "grimaces and complains with straight leg raising done in any manner but there is no true limitation of straight leg raising movement." Berry reviewed x-rays, but stated "imaging scans were not available...." However, he also noted that reports of two MRI's performed at Methodist Medical Center did not indicate abnormal findings. Berry concluded, "I find no evidence of permanent physical impairment related to trauma of the spine, assuming all available records and reports are accurate." Berry recommended, "treatment modalities for acute pain are not likely to be effective in cases of chronic pain. Therefore, I would recommend that this treatment be discontinued and appropriate psychological consultation and testing be obtained."
¶ 5. Clements testified that after this examination Welling and/or Continental Casualty Company [the carrier] ceased paying medical benefits. Nevertheless, *478 since his back still hurt he continued to seek treatment from Talkington. He testified that Talkington and Wilder had billed him for approximately $2,500.00 for care rendered after Welling and the carrier ceased to pay for medical benefits until the time of the workers' compensation hearing.
¶ 6. On November 16, 1995, Berry conducted a second "independent medical examination." During this examination, Berry reviewed a CT and a MRI that were performed in 1993. He did not note that he reviewed any x-rays. He conducted leg raise and stretching exercises and concluded Clements had no "physical impairment" or "physical limitations or restrictions."

ANALYSIS

1. LIABILITY FOR PAST MEDICAL TREATMENT BY TALKINGTON AND WILDER AND

2. WHETHER CLEMENTS NEEDED ONGOING MEDICAL TREATMENT
¶ 7. Appellate review in actions arising under the Workers' Compensation Law, Miss.Code Ann. Act § 71-3-1, et seq. (1972), is limited to a determination of whether the Workers' Compensation Commission's erred as a matter of law or made factual findings contrary to the overwhelming weight of the evidence. Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988); Marshall Durbin v. Hall, 490 So.2d 877, 879 (Miss.1986).
¶ 8. The administrative judge found that Clements was temporarily totally disabled from March 29, 1993 until October 26, 1993, and that he suffered no permanent occupational disability. In finding that Clements needed no further medical treatment after October 26, 1993, the administrative judge relied upon Berry's first independent examination and rejected Clements' testimony and treating decisions of Talkington. The Commission affirmed the administrative judge's decision.
¶ 9. As a matter of law, Berry's expert opinion was insufficient evidence for the Commission to find that the treatment provided by Talkington and Wilder from October 26, 1993 until April 15, 1995 was not reasonable and necessary. Miss.Code Ann. § 71-3-15(1) requires that
[t]he employer shall furnish such medical, surgical and other attendance or treatment ... for such period as the nature of the injury or the process of recovery may require.... The injured employee shall have the right to accept the services furnished by the employer or, in his discretion, to select one (1) competent physician of his choosing to administer medical treatment.
In considering what constituted reasonable and necessary treatment, the supreme court held in Marshall Durbin Companies v. Warren, 633 So.2d 1006 (Miss.1994), that
"[w]hen there exists a conflict between expert scientific testimony and fact testimony, the trier of fact must ascertain the relative weight of each. As a universal practice, proof of facts weigh more heavily than contrary opinions thereto. Opinion evidence has little probative value when placed in strife with physical facts and, consequently, opinion evidence should not be viewed as enough to establish a conflict in evidence."
Id. at 1010 (citing 32 C.J.S. Evidence Sec. 572(2), at 684-87 (1964)).[1]
*479 ¶ 10. In this case, Talkington performed numerous "flip" and "Faber" tests throughout the disputed time period and reported positive results. Berry testified that while he was unsure what Talkington meant by a flip test, it could mean that a patient was tested to see the degree to which he could raise his legs straight out from his body when seated, and then "flipped over" onto his back to again test the patient's ability to raise his legs straight out from his body, but Berry said he could not comment upon what Talkington found because he was not present during Talkington's testing. Additionally, Talkington's records indicated that he conducted numerous leg raising tests over several years and all resulted in positive findings indicating an injury to Clements' back. However, during his two examinations Berry also conducted leg raising tests, but did not note any positive findings. This expert testimony of Berry did not negate Clements' testimony that he was in pain and Talkington's documentation of his test results and treatment decisions.
¶ 11. Concerning the Faber test and x-rays, Berry stated that he "did not perform the Faber test because he [Clements] did not have any signs that I could see of sacroiliac joint or hip disease." However, Talkington referred Clements to "an arthritis specialist," James K. Hensarling, M.D., in October of 1993. Hensarling took and reviewed x-rays and reported:
"His [Clements'] x-ray revealed an SI joint haziness on the right. I've looked at this and it certainly appears to be sacroiliac change but is not characteristic of osteo and is unilateral.... At this time I am unable to pen a diagnosis of a rheumatic disease on the patient although I have a reservation about the right sacroiliac changes."
Berry, however, never reviewed Hensarling's x-rays. As such, the treating physician suspected a sacroiliac injury, so he tested for such injury and referred Clements to a specialist who could neither confirm it or rule it out. Berry's opinion which was based upon his two examinations that neither repeated the Faber tests nor reviewed the specialists' x-rays, is insufficient to overcome the treating doctors' finding of an injury. See Johnson v. Ferguson, supra at n. 1.
¶ 12. Throughout Talkington's notes made during the period of time in dispute, he noted that Clements' condition improved, and he not only prescribed medication to relieve Clements' back pain but also provided free samples of medication when Clements could not afford to pay for the prescriptions after Welling and the carrier ceased to pay for medical treatment. Additionally, in a letter to Clements' attorney written in October of 1994, he stated there was still "slight improvement" in his symptoms and it would be "difficult to state a date of maximum medical recovery." Throughout this time period, Talkington documented that Clements could not return to work. However, Wilder took over Clements' treatment in April through July of 1995, and he did not see continued progress. Rather, he found that while Clements still showed physical deficits, his condition was not changing. He prescribed no medication nor gave Clements any samples of medication, and he recommended Clements use over the counter medications and soak in hot water should he need relief from any back pain.
¶ 13. The supreme court stated in Spann v. Wal-Mart, 700 So.2d 308 (Miss.1997), "the case law and Act mandate that as *480 long as a particular treatment is deemed `necessary and reasonable' a competent treating physician, the employee [sic] and carrier are obligated to furnish such treatment." Id. at 315. Therefore, we find that Clements was temporarily totally disabled from October 26, 1993 through April 13, 1995, when Wilder found treatment was ineffective, and remand to the Commission for determination of the amount of fees due Talkington and Wilder for treatment during this period. However, because the record does not disclose that the treating physician felt further treatment could benefit Clements after April 13, 1995, we find the Commission's decision that Clements did not need continuing treatment was not contrary to the overwhelming weight of the evidence, and affirm upon this issue.

WHETHER CLEMENTS SUSTAINED A PERMANENT OCCUPATIONAL DISABILITY
¶ 14. As previously discussed, both treating physicians, Talkington and Wilder, noted that at the time they ceased treating Clements he still had physical limitations. However, the fact that a claimant is not restored to the same physical condition he exhibited before an injury is not sufficient to find a permanent occupation disability; rather, there needs to be an "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or other employment." Jordan v. Hercules, 600 So.2d 179, 183 (Miss.1992). See also, Hale v. Ruleville Health Care Center, 687 So.2d 1221, 1225 (Miss.1997); DeLaughter v. South Central Tractor Parts, 642 So.2d 375, 379 (Miss.1994).
¶ 15. Lynn Hayes, a vocational rehabilitation counselor with Crawford and Company Disability Management, testified that taking into account Clements' own statements about his physical condition as well as Dr. Talkington's and Dr. Wilder's records, Clements could still lift fifty pounds which made him eligible for "medium" work as defined by the United States Department of Labor. She also testified there were approximately 1600 jobs in the geographical area, including Jackson, Mississippi, that Clements could perform.
¶ 16. Will Osborne, terminal manager for Welling, testified that when Clements worked in the warehouse he lifted boxes weighing between thirty-five and fifty pounds. He also stated that he had told Clements that if he returned to work, he could assign him to lighter duties than he performed when he was injured.
¶ 17. Talkington's records put no exact weight limit on how much weight Clements could lift, but he did state he could not return to his former job or perform any heavy lifting. Clements testified that he was no longer able to do the work he had done before injuring his back and could only lift approximately fifteen pounds. He also testified that he had used self-study courses and was training himself to be a taxidermist. When questioned about lifting involved in that profession, he stated that he had constructed an "A-Frame" type of device similar to a block and tackle to assist him with heavy hides. Clements testified that he was fulfilled in this new profession and did not want to return to work for Welling or find another job. Additionally, according to discovery answers and supplemental testimony, Clements did not seek to return to work for Welling, and his efforts to gain employment elsewhere almost totally occurred after Welling's vocational expert, Hayes, interviewed him.
¶ 18. When a claimant chooses not to return to the employer, the claimant bears the burden of proof of showing a loss of earning capacity. Hale v. Ruleville Health Care Center, 687 So.2d 1221 at 1226 (Miss.1997)(citing Jordan v. Hercules, 600 So.2d 179 at 183-184 (Miss.1992)). The administrative judge found that Clements made a "voluntary withdrawal from the workforce." Clements argues that his unsuccessful attempts to find other employment showed that he suffered a loss of earning capacity. See DeLaughter v. *481 South Central Tractor Parts, 642 So.2d at 379 (Miss.1994). However, Clements' efforts to find employment can, at best, only be described as half-hearted. Therefore, we cannot say that the administrative judge's finding that he did not suffer a permanent occupational disability contrary to the overwhelming weight of the evidence. See Fought v. Stuart C. Irby Co., 523 So.2d at 317 (Miss.1988); Marshall Durbin v. Hall, 490 So.2d at 879 (Miss. 1986).

COMPUTATION OF AVERAGE WEEKLY WAGE
¶ 19. The administrative judge determined Clements' weekly wage in accordance with Miss.Code Ann. § 71-3-31 (1972), which provides the wages earned by a claimant during the 52 weeks preceding the date of injury are totaled and then divided by 52 to reach the average weekly wage. On the day of the hearing Clements attempted to amend his petition to controvert to assert the date of injury was March 29, 1993 rather than October 15, 1992. Clements attempted this because he sought to allege his injury was a latent injury so that his average weekly salary would then have been computed from the date the injury manifested itself, rather than when it occurred, and would have been higher than that computed by the administrative law judge. See Pepsi Cola Bottling Company of Tupelo v. Long, 362 So.2d 182, 185 (Miss.1978).
¶ 20. A latent injury is an injury that a reasonably prudent man would not be aware of at the moment it was sustained. See Georgia Pacific Corp. v. Taplin, 586 So.2d 823, 827 (Miss.1991); Quaker Oats Co., v. Miller, 370 So.2d 1363, 1366 (Miss.1979). In this case, Clements knew as of the moment he injured his back that he had sustained the injury in question. As such, there is no merit to his assertion that the petition should have been amended to assert latent injury or that wage statements reflecting wages earned after he sustained the injury should have been considered.

CONCLUSION
¶ 21. The supreme court has repeatedly stressed that the Workers' Compensation Act is to be liberally construed, and doubtful cases should be resolved in favor of the claimant. See, e.g., General Electric Co., v. McKinnon, 507 So.2d 363, 367 (Miss.1987). Moreover, the Act is to be interpreted liberally "exceptionally" in the area of medical benefits. V. Dunn, WORKMEN'S COMPENSATION, § 39 (3rd ed.1980). Therefore, we find that an expert witness' opinion that medical treatment was not necessary was insufficient to support such a finding when the claimant's testimony and treating physician's records directly refuted the opinion. It would be inequitable for a claimant to rely upon his treating physician's advice as to how to treat a work related injury yet at the end of litigation be faced with the cost of such treatment.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY IS REVERSED IN PART AND AFFIRMED IN PART AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO BOTH THE APPELLANT AND THE APPELLEE EQUALLY.
BRIDGES, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.
McMILLIN, C.J., DISSENTS WITH SEPARATE OPINION JOINED BY SOUTHWICK, P.J., COLEMAN AND THOMAS, JJ.
McMILLIN, C.J., DISSENTING:
¶ 23. I respectfully dissent. The Commission's decision that Clements had reached maximum recovery from his back injury on October 26, 1993, and had suffered no permanent partial disability was supported by competent evidence in the record in the form of Dr. Berry's examination *482 and resulting opinion. In my view, this conclusion militates against the proposition that Welling Truck Service is responsible for Dr. Talkington's treatment that continued long after Dr. Berry's examination findings became known to all involved. The employer is liable only for medical treatment "for such period as the nature of the injury or the process of recovery may require." Miss.Code Ann. § 71-3-15 (Rev.1995). The Commission held that Dr. Talkington's dogged attempts to treat Clements for subjective complaints of pain when those complaints were unaccompanied by any observable physical cause were (a) not helpful in his recovery and (b) were not indicated to manage non-disabling pain that persisted after Clements's medical recovery. This conclusion is supported by competent evidence in the record in the form of Dr. Berry's findings. Even one of Clements's own treating physicians, Dr. Wilder, suggested that the proper means of dealing with his recurring complaints of pain was to treat them with over-the-counter analgesics.
¶ 24. When a decision of the Workers' Compensation Commission is appealed to us, we are not permitted to re-weigh the evidence to determine where we believe the preponderance of the evidence lies. Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1224-25 (Miss.1997). Rather, we are given a limited duty in our review and are obligated to affirm if there is substantial evidence in the record to support the Commission's decision. Inman v. Coca-Cola/Dr. Pepper Bottling Co., 678 So.2d 992, 993 (Miss.1996). In this case, I would find that Dr. Berry's findings provided substantial weight in support of the Commission's findingsenough, in fact, to require us to affirm the Commission.
SOUTHWICK, P.J., COLEMAN AND THOMAS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] See also, Johnson v. Ferguson, 435 So.2d 1191 (Miss.1983), in which the supreme court held the Commissions' decision was against the overwhelming weight of the evidence when it disregarded testimony by the claimant's treating physician that a myelogram and surgery were necessary to correct a ruptured disk, and instead relied upon the employer's expert who opined that no myelogram was necessary and the claimant's back pain resulted from a psychiatric condition. Id. at 1193-95. LARSON'S WORKERS COMPENSATION LAW notes that Ferguson, supra, is one of many cases standing for two "self-evident propositions" that treating physicians' opinions carry more weight than those of physicians who examine a claimant solely for purposes of testifying and opinions of treating specialists carry more weight than those of general practitioners. A. Larson, LARSON'S WORKERS COMPENSATION LAW, § 80.24(b) n. 83.1. Accord, South Central Bell Telephone Co. v. Aden, 474 So.2d 584 (Miss. 1985), in which the supreme court upheld the Commission's finding of a disability when it based it's decision upon the testimony of the claimant's treating physician even though more specialized physicians testified for the employer that there was no disability. Id. at 593. But see, Sibley v. Unifirst Bank for Savings, 699 So.2d 1214 (Miss.1997)(stating "the burden of proof is heightened in cases concerning mental or psychological injury.")