17 So.3d 1119 (2009)
Karen JOHNSON, Appellant/Cross-Appellee,
v.
SANDERSON FARMS, INC., Appellee/Cross-Appellant.
No. 2008-WC-01218-COA.
Court of Appeals of Mississippi.
August 25, 2009.
*1120 John Hunter Stevens, Jackson, attorney for appellant.
Ryan Jeffrey Mitchell, Laurel, attorney for appellee.
Before MYERS, P.J., IRVING and ROBERTS, JJ.
IRVING, J., for the Court.
¶ 1. On October 20, 2002, Karen Johnson filed a petition to controvert with the Mississippi Workers' Compensation Commission, alleging that she had developed thoracic outlet and carpal tunnel syndromes while working at Sanderson Farms, Inc. (Sanderson Farms). Following a hearing, an administrative law judge (ALJ) concluded that Johnson had developed bilateral carpal tunnel syndrome while employed at Sanderson Farms and awarded her temporary total benefits for the period commencing March 19, 2002, and ending April 14, 2005. The ALJ also awarded Johnson permanent partial disability benefits for a fifty percent and twenty-five percent loss of use of her upper right and upper left extremities, respectively. Sanderson Farms appealed to the Commission, which affirmed the ALJ's finding of compensability for bilateral carpal tunnel syndrome and the award of temporary total disability benefits. However, the Commission reduced the award of permanent partial disability benefits to five percent in accordance with the medical bilateral impairment rating assigned to Johnson by her treating physician. Johnson then appealed to the Copiah County Circuit Court, and Sanderson Farms cross-appealed. The circuit court affirmed the decision of the Commission. It is from this decision that Johnson appeals, and Sanderson Farms cross-appeals.
¶ 2. Johnson asserts that the Commission erred in reversing the findings of the ALJ and that the circuit court erred in failing to reinstate the findings of the ALJ. Sanderson Farms asserts that the Commission erred (1) in affirming the ALJ's *1121 finding that Johnson had developed carpal tunnel syndrome while employed at Sanderson Farms, (2) in affirming the ALJ's finding that Johnson was temporarily and totally disabled for a three-year period, and (3) in finding that Johnson suffered a five percent permanent industrial loss of her left and right upper extremities.
¶ 3. Finding no reversible error, we affirm.

FACTS
¶ 4. Johnson began working in 1993 as a deboner at Sanderson Farms in Hazelhurst, Mississippi. As a deboner, Johnson cut and clipped chicken daily. At some point during the course of her employment, she was moved to a position which required her to load chickens onto a machine. Johnson's jobs required her to perform repetitive, manual work.
¶ 5. Early in 2002, Johnson began experiencing pain in her wrists as well as pain, numbness, and tingling in her hands. Per her supervisor's advice, Johnson sought help from Jean Boone, a nurse at Sanderson Farms. Boone wrapped Johnson's hands and sent her back to work. After this course of treatment continued for a while, Johnson sought relief from Dr. Alfonso H. Santos Jr. on March 19, 2002.[1] At that time, Johnson complained of bilateral hand and wrist pain, more on the right than on the left. Dr. Santos established a management plan for Johnson that included twenty-five milligrams of Vioxx and amitriptyline for pain, headaches, and sleeplessness. He recommended that Johnson wear a wrist guard on her right wrist. Dr. Santos gave Johnson a two-day work excuse and wrote a letter recommending that she avoid repetitive motion while at work. Johnson saw Dr. Santos again on March 26, 2002, and on April 1, 2002. There was no improvement in her condition. Therefore, he referred Johnson to the University of Mississippi Medical Center Hand Clinic and ordered an electromyography (EMG) and nerve conduction study (NCS) to confirm that she had carpal tunnel syndrome.
¶ 6. On April 26, 2002, Dr. Abelardo S. Wee performed an NCS on Johnson which revealed that "there was no electrophysiologic evidence of carpal tunnel syndrome."
¶ 7. Johnson began seeing Dr. Sheila Lindley as her primary physician on May 2, 2002.[2] Dr. Lindley diagnosed Johnson with bilateral carpal tunnel syndrome, ordered her to obtain an EMG and an NCS, and recommended that Johnson refrain from returning to work until she reviewed the results. Dr. Lindley then referred Johnson to Dr. Art Leis, an electromyographer. Dr. Leis performed an EMG and an NCS on Johnson's upper extremities on May 20, 2002. The EMG and NCS revealed "no electrophysiologic evidence of carpal tunnel syndromes or other mononeuropathies involving the upper limbs."
¶ 8. On June 20, 2002, Dr. Lindley examined Johnson and diagnosed her as possibly having thoracic outlet syndrome in addition to carpal tunnel syndrome.[3] Johnson saw Dr. Lindley again on August 8, 2002. Following this visit, Dr. Lindley noted that Johnson's problem did not require surgery despite Johnson's continued complaints of pain and numbness in her hands. Instead, Dr. Lindley prescribed *1122 medication and ordered therapy in the form of heat, stretching, and trigger-point massage. On November 21, 2002, Dr. Lindley gave Johnson a steroid injection in her right carpal tunnel, but the injection provided no relief. Dr. Lindley's notes from January 23, 2003, reveal that she did not think that Johnson was a surgical candidate because the injection did not provide her any relief. Rather, Dr. Lindley felt that Johnson could benefit from physical therapy, so she referred her to Dr. Michael Winkelmann for physical therapy.
¶ 9. Prior to seeing Dr. Winkelmann, Johnson saw Dr. Eric E. Wegener on September 2, 2003, for an independent medical examination. Dr. Wegener's notes reflect the results of the examination:
On extremity exam she has Tinel's Phalen's [sic] and compression test positive bilateral wrist [sic] over the median nerve. She has positive compression over her pronator tares [sic] bilaterally. All other provocative tests of the wrists are negative. She has no numbness, tingling or ulnar nerve symptoms. Range of motion is normal. Strength appears to be normal. ...
Johnson saw Dr. Wegener for a follow-up visit on October 21, 2003. In notes from this visit, Dr. Wegener wrote that, in his view, Johnson did not have carpal tunnel syndrome. He specifically stated:
After reviewing [Johnson's] medical history and her examination, diagnostic/therapeutic injection, etc., it is become [sic] my medical opinion that this patient does not have carpal tunnel syndrome. Therefore, no intervention from that standpoint should be undertaken. Since she has no carpal tunnel syndrome and no abnormalities that can be detected other than subjective abnormalities, I think a permanent impairment rating of 0% and return to regular duty without restrictions is indicated.
¶ 10. In January 2004, Dr. Wee performed another EMG and an NCS on Johnson. Johnson was referred to Dr. Wee by Dr. Alan E. Freeland, one of Dr. Lindley's partners. Following the EMG and the NCS, Dr. Wee noted: "Nerve conduction and needle EMG studies were performed on the right upper extremity. The findings were within normal limits. There is no electrophysiologic evidence of neuropathy, myopathy, or cervical motor radiculopathy."
¶ 11. On January 12, 2004, Johnson saw Dr. Chris Etheridge at the Mississippi Sports Medicine and Orthopaedic Center. Dr. Robert Walker, whom Johnson saw on her own, referred her to Dr. Etheridge. Dr. Etheridge noted the following regarding Johnson's physical examination:
She has an immediately positive compression test in less than 10 to 15 seconds. Positive Tenel's into each hand, carpal tunnel area. She has been wearing splints faithfully. She is on pain medication. No anti-inflammatories. She has had a nerve conduction study at UMC, which we will get. But, she has worsening symptoms despite being off [work]. She has had several injections which would give her 2-3 weeks relief only.
Dr. Etheridge also stated that he planned to schedule surgery for a right carpal tunnel release. Further, the record contains an instruction form for the surgery, which was scheduled for February 4, 2004. There is a handwritten note at the top, left corner of the form which reads: "pt. called to cancel surgery  car trouble will call when ready to reschedule." Apparently, Johnson never rescheduled the surgery, as the record lacks any further communication with Dr. Etheridge.
¶ 12. In April 2004, Johnson saw Dr. Winkelmann. Dr. Winkelmann's impression *1123 was that Johnson's symptoms could be tendinitis related; however, he noted that she did not appear to have "any clear neurologic deficits." Further, Dr. Winkelmann concluded that "a short course of physical therapy should help get her back into working condition." Johnson saw Dr. Winkelmann again in May 2004. Dr. Winkelmann's notes from this visit read, in pertinent part, as follows: "At this point, I am getting a functional capacity evaluation and proceed[ing] with returning her to work per her original functional capacity evaluation. I do feel that it is mostly tendinitis related."[4]
¶ 13. Johnson returned to see Dr. Lindley on June 24, 2004. In her office notes regarding this visit, Dr. Lindley wrote:
I have discussed operative intervention with Karen Johnson. I have been reluctant to perform surgery on this patient, but she has had a positive diagnostic injection into the right carpal canal that is encouraging and her symptomatology is very strongly that of carpal tunnel syndrome. ... I will discuss surgery with her further at her next visit....
Then, on October 8, 2004, Dr. Lindley performed a right carpal tunnel release on Johnson. During a post-operative visit on October 21, 2004, Dr. Lindley diagnosed Johnson with left carpal tunnel syndrome. Thereafter, Dr. Lindley referred Johnson to Dr. Philip Blount who saw her the following December. Dr. Blount performed an EMG and an NCS of Johnson's left and right hands. He concluded that the "study reveals no evidence of carpal tunnel syndrome and peripheral neuropathy." Nevertheless, Dr. Lindley performed a left carpal tunnel release on December 20, 2004.[5]
¶ 14. As stated, Johnson filed a claim for workers' compensation benefits in October 2002. During the course of the investigation into Johnson's claimthat she developed carpal tunnel syndrome while working at Sanderson Farms  Dr. Lindley provided two depositions.
¶ 15. In the first deposition, taken November 17, 2004, Dr. Lindley testified that Johnson had an NCS at some point between January 2003 and June 2004 that was positive for carpal tunnel syndrome.[6] Dr. Lindley stated that she recommended surgical intervention after Johnson's visit on June 20, 2004. She stated that her decision was based on several factors: (1) Johnson's complaints remained consistent, (2) Johnson had "progressed to a positive objective EMG nerve conduction study," and (3) Johnson had responded well to a carpal tunnel injection. Dr. Lindley noted that the EMG showed moderately severe carpal tunnel syndrome, which she surmised was a surgical condition.
¶ 16. During her second deposition, taken March 30, 2005, Dr. Lindley admitted that she had been mistaken during her previous deposition when she stated that Johnson had had a positive NCS. Also, Sanderson Farms's attorney pointed out *1124 that Dr. Lindley performed a left carpal tunnel release on December 20, 2004, even though an NCS of Johnson's wrists, which had been taken only four days earlier, was normal. Dr. Lindley responded by saying that "clinically, she had a mild carpal tunnel syndrome on the left, and she had shown marked improvement on the right side following an open decompression.[7] And she had clinically intraoperative [sic] compression on the right side."
¶ 17. Dr. Lindley remained steadfast in her diagnosis that Johnson had carpal tunnel syndrome. She also stated unequivocally that Johnson's work at Sanderson Farms contributed to her carpal tunnel syndrome. Dr. Lindley testified that her opinions were based on her prolonged relationship with Johnson.
¶ 18. During the hearing before the ALJ, Johnson testified, inter alia, that since leaving Sanderson Farms she had been unable to find work. Further, Johnson stated that, although she continues to have pain, her condition has improved, as the pain is not as bad as it was prior to the surgeries.
¶ 19. Margaret Easterling, the field-employee-relations manager at Sanderson Farms, testified that Johnson brought a work excuse from Dr. Santos sometime after March 19, 2002. According to Easterling, when Johnson returned to work, her duties were modified per Dr. Santos's instructions. Easterling testified that Johnson brought in another medical excuse on April 22, 2002, advising that she needed to be off work for two weeks. Easterling recalled that she then gave Johnson family-medical-leave papers but that Johnson never returned them. Also, according to Easterling, she has not heard anything from Johnson since that day.
¶ 20. Following the hearing, the ALJ found, as we have already noted, that Johnson developed carpal tunnel syndrome while working at Sanderson Farms and ordered Sanderson Farms and its insurance carrier to pay Johnson workers' compensation benefits as follows: (1) temporary total disability benefits in the amount of $153.53 per week for the period of March 19, 2002, to April 14, 2005; (2) permanent partial disability benefits in the amount of $153.53 for a period of 100 weeks, representing a fifty percent loss of use of her right upper extremity; and (3) permanent partial disability benefits in the amount of $153.53 for a period of fifty weeks, representing a twenty-five percent loss of use of the left upper extremity.[8] The ALJ ordered the employer and carrier to commence payment of the permanent partial benefits on April 15, 2002, following payment of the temporary total disability payments.
¶ 21. As stated, the Commission affirmed the ALJ's finding that Johnson developed a compensable, work related injury and the award of temporary total disability benefits but reversed the ALJ's finding that Johnson suffered a permanent partial disability of fifty and twenty-five percent to her upper right and left extremities, respectively, finding instead that Johnson suffered only a five percent bilateral impairment to her upper right and left extremities.
¶ 22. Additional facts, as appropriate, will be related during our analysis and discussion of the issues.

*1125 ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 23. We begin our analysis by setting forth our standard of review, which is well established:
The standard of review in workers' compensation cases is limited. The substantial evidence test is used. See Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1245-47 (Miss.1991). The Workers' Compensation Commission is the trier and finder of facts in a compensation claim. [An appellate court] will overturn the Workers' Compensation Commission decision only for an error of law or an unsupported finding of fact. Georgia Pac. Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991). Reversal is proper only when a Commission order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law. Smith v. Jackson Constr. Co., 607 So.2d 1119, 1124 (Miss.1992).
Weatherspoon v. Croft Metals, Inc., 853 So.2d 776, 778(¶ 6) (Miss.2003).

DIRECT APPEAL
¶ 24. Johnson contends that the Commission erred in reversing the findings of the ALJ and that the circuit court erred in not reinstating those findings. Before going further, we point out that it is the Commission's decision, not the ALJ's, that is appealable to the circuit court. Therefore, the issue is not whether the Commission erred in reversing the findings of the ALJ, but whether there is substantial evidence to support the findings of the Commission and whether the circuit court erred in affirming the decision of the Commission.
¶ 25. Johnson's principal argument is that the Commission erroneously favored the findings of non-treating physicians over the findings of Dr. Lindley, Johnson's treating physician. In support of her position, she directs our attention to a footnote in Clements v. Welling Truck Service, Inc., 739 So.2d 476, 478 (Miss.Ct.App.1999) which cites Johnson v. Ferguson, 435 So.2d 1191 (Miss.1983) and various other authorities for the proposition that under the Workers' Compensation Act, treating physicians' opinions carry more weight than those of physicians who examined a claimant solely for the purpose of testifying at trial.
¶ 26. We agree that the authorities cited in the footnote stand for the asserted proposition. However, we find that Johnson's reliance on Clements and the authorities cited therein is misplaced, as there is no evidence in this case which suggests that the Commission disregarded the findings of Dr. Lindley. The record reveals quite the contrary. The Commission accepted the ALJ's finding as it relates to the compensability of Johnson's claim for bilateral carpal tunnel syndrome. While the Commission rejected the ALJ's finding that Johnson suffered a permanent partial disability of a fifty and twenty-five percent loss of industrial use to her upper right and left extremities, respectively, it is noteworthy that Dr. Lindley never assessed such percentages to Johnson. Rather, Dr. Lindley assessed Johnson's permanent partial disability at five percent in both the right and left extremities. That is the exact percentage awarded by the Commission.
¶ 27. We find substantial evidence in support of the Commission's findings. As noted, Dr. Lindley affirmatively stated that she believed that Johnson suffered from carpal tunnel syndrome even though none of the nerve conduction studies revealed positive findings for carpal tunnel syndrome. According to Dr. Lindley, she based her diagnosis on Johnson's complaints and on the fact that Johnson received *1126 relief from the carpal tunnel injections. The ALJ determined that Johnson, in fact, suffered from carpal tunnel syndrome, a finding that was accepted by the Commission. No medical witness testified that Johnson suffered any disability greater than five percent. Therefore, we find no merit to the issues raised by Johnson on direct appeal. We now turn to the issues presented by Sanderson Farms's cross-appeal.

CROSS-APPEAL
¶ 28. Sanderson Farms argues that the circuit court erred in affirming the Commission's finding that Johnson developed carpal tunnel syndrome while employed at Sanderson Farms. Sanderson Farms contends that because there is no objective medical evidence which supports a finding of carpal tunnel syndrome, the finding that Johnson developed carpal tunnel syndrome while employed at Sanderson Farms is not supported by substantial evidence.
¶ 29. The record clearly reflects that although Johnson had several nerve conduction studies, none revealed carpal tunnel syndrome. Nevertheless, Dr. Lindley stated that she believed that subjective evidence, e.g., Johnson's physical examination and complaints, supported her diagnosis. She stated in her first deposition that she ordered the EMG and nerve conduction studies in order to confirm her clinical diagnosis of carpal tunnel syndrome. The following exchange occurred during Dr. Lindley's first deposition:
Q. What would the results of the EMG tell you? Would it confirm that 
A. It usually tells me  it either confirms my clinical diagnosis, it  and it tells me severity.
Q. Okay. Does it-do the results, are they used to rule out carpal tunnel syndrome?
A. Well, not entirely. They can come back to [sic] normal. If they did, then I would say that's a very mild carpal tunnel. It's not  it's not positive on electrophysiologic studies, but I think she may have it clinically. If it's mild, then I usually think, [w]ell, it's not an operative case at this point.
* * * *
Q. Okay. When was the next time you saw Ms. Johnson?
A. On June the 20th of 2002.
Q. And at that time, she had had the nerve conduction study done?
A. Correct.
Q. Okay. And did you have the results of the nerve conduction study at that visit?
A. I did.
Q. What did the results show?
A. It showed  [Dr. Leis] did both, he did the nerve conduction study, and he also did the needle that we were talking about, checking multiple muscles in the upper extremity. All the muscles tested normal. And he said that it was a normal nerve conduction study as well.
Q. Okay. So both of the tests that [Dr. Leis] performed came back normal?
A. That's correct.
* * * *
Q. Okay. Your impression at that time continued to be that she had bilateral carpal tunnel syndrome?
A. That's correct.
¶ 30. Dr. Lindley stated that Johnson had received an injection in her right carpal tunnel, but she did not receive any improvement. Therefore, she referred her to Dr. Winkelmann for physical therapy. She stated that at that point she did not *1127 feel as though Johnson was a candidate for surgery because she did not get relief from the injection:
Q. Okay. And you didn't feel like she was a surgical candidate because she had not shown any improvement from the injection?
A. Well  correct. And she had negative nerve conduction studies. It would be very unusual for me to operate on someone with negative nerve conduction studies.
Dr. Lindley went on to state that Johnson had an NCS between January 2003 and June 2004 that was positive for carpal tunnel syndrome. However, as previously noted, Dr. Lindley stated in her second deposition that she was mistaken and that Johnson never had an NCS to come back positive for carpal tunnel syndrome. Nevertheless, she stood by her diagnosis and her decision to perform right and left carpal tunnel releases. On this point, the record reflects the following:
Q. Dr. Lindley, we are continuing your deposition of November 17th, 2004, that was recessed so that we could all try to obtain some records that we did not have access to at that time. Let me start with confirming some of the things that you testified to before, and then we'll pick up with the records. We talked about nerve conduction studies in relation to this claimant's carpal tunnel syndrome. One of the things you told me at your earlier deposition was that, if a nerve conduction study came back normal and showed no evidence, electrophysiological evidence of carpal tunnel syndrome, then as I understand it, that doesn't keep you from ruling out the presence of carpal tunnel syndrome; is that right?
A. That's correct.
Q. Okay. And I believe you told me that, if that happened, your diagnosis would be of a mild case of carpal tunnel syndrome?
A. That's correct.
Q. Okay. We had some discussion at that time about a nerve conduction study that was done on this claimant that you were under the impression at that time that there were some positive findings on [a] nerve conduction study. Since that time, have you been able to locate any nerve conduction study that showed any positive findings?
A. No. I have not. And I was in error.
¶ 31. It is undisputed that Johnson experienced pain in both of her hands. However, what is disputed is whether the pain was caused by carpal tunnel syndrome. Dr. Lindley, who treated Johnson regularly over a two-year period, remained steadfast in her belief that Johnson's pain was a result of carpal tunnel syndrome. Dr. Lindley defended her diagnosis by stating: (1) that Johnson's history and physical examination showed "provocative testing" for carpal tunnel syndrome, (2) that Johnson responded well to medications that she had placed her on for carpal tunnel syndrome, and (3) that Johnson responded well to carpal tunnel injections. Also, Dr. Lindley stated that Johnson's examination continued to be "pretty well consistent with carpal tunnel."
¶ 32. Further, Dr. Lindley testified that she relied on a clinical study done by Dr. David Green, a hand surgeon in San Antonio, Texas, to support her diagnosis. Dr. Lindley stated that Dr. Green found that patients who had had injections as a diagnostic test for carpal tunnel syndrome experienced improvement. According to Dr. Lindley, Dr. Green's study constitutes statistically significant evidence that a patient *1128 suffers from carpal tunnel syndrome if the patient's condition improves after having the diagnostic injections.
¶ 33. Based on the foregoing reasons, we conclude that substantial evidence exists to support the Commission's finding that Johnson developed carpal tunnel syndrome while working at Sanderson Farms, even though no EMG or NCS revealed the same. Therefore, we affirm the judgment of the circuit court, which affirmed the decision of the Commission. This issue lacks merit.
¶ 34. Sanderson Farms also argues that the circuit court erred in affirming the Commission's decision, which found Johnson temporarily and totally disabled for the three-year period from March 19, 2002, to March 30, 2005. Sanderson Farms asserts that Johnson failed to prove that she was disabled within the meaning of Mississippi Code Annotated section 71-3-3(i) (Rev.2000), which defines disability as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings."
¶ 35. Sanderson Farms argues that even though Dr. Lindley testified that Johnson could have performed light-duty work with restrictions prior to receiving the carpal tunnel releases, Johnson never returned to Sanderson Farms to inquire about job opportunities after she brought in the work excuse from Dr. Santos in April 2002.[9] As a result, Sanderson Farms contends that Johnson is not eligible to receive temporary benefits and cites Hale v. Ruleville Health Care Center, 687 So.2d 1221 (Miss.1997) to support its contention. In Hale, our supreme court held that:
Pursuant to [Mississippi Code Annotated section] 71-3-3(i), when there is a finding of permanent partial disability, the claimant bears the burden of making a prima facie showing that he has sought and been unable to find work "in the same or other employment." When the claimant, having reached maximum medical recovery, reports back to the employer for work, and the employer refuses to reinstate or rehire him, then the claimant has established a prima facie showing of total disability. The burden then shifts to the employer to prove that the claimant has suffered only a partial disability or that the employee has suffered no loss of wage earning capacity.
Id. at 1226 (citing Jordan v. Hercules, Inc., 600 So.2d 179, 183 (Miss.1992)).
¶ 36. Sanderson Farms's attorney asked Johnson whether she had called Sanderson Farms at any point after her surgeries to see if there was a job available that she could perform. Johnson responded that she had not because Boone, the nurse at Sanderson Farms, had told her in 2002 that there were no jobs at Sanderson Farms that would not require her to use her hands.
¶ 37. Simply because Johnson did not return to Sanderson Farms to seek employment is of no consequence, as the record reflects that she looked for employment elsewhere, which is in accordance with section 71-3-3(i). Johnson reached maximum medical improvement in March 2005 and conducted a job search the following May and again in January 2006. *1129 During this time, Johnson submitted applications at fourteen different businesses.
¶ 38. Because we find that substantial evidence exists to support the circuit court's judgment affirming the Commission's decision that Johnson was temporarily and totally disabled from March 19, 2002, to March 30, 2005, we affirm. There is no merit to this issue.
¶ 39. In its final issue, Sanderson Farms argues that if we find that substantial evidence supports the circuit court's judgment the Commission's decision finding a compensable injury, we should also affirm the circuit court's judgment affirming the Commission's award of a five percent impairment rating to Johnson for industrial loss of use of each upper extremity. Based on our disposition of the issues presented in the direct appeal, this issue is moot.
¶ 40. THE JUDGMENT OF THE COPIAH COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT/CROSS-APPELLEE AND ONE-HALF TO THE APPELLEE/CROSS-APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, J.
CARLTON, J., Dissenting.
¶ 41. I respectfully dissent to the majority's opinion, as I would reverse the circuit court's judgment affirming the Mississippi Workers' Compensation Commission's award of temporary total and permanent partial disability benefits and would grant the Sanderson Farms' cross-appeal. See Miss.Code Ann. § 71-3-7 (Rev.2000) (requiring a causal connection between injury and claimed disability and requiring the claimant to show injury that arose out of and in the course of employment).
¶ 42. The claimant bears the burden of proving entitlement to benefits by a preponderance of the evidence as to each element of the claim. Harrell v. Time Warner/Capitol Cablevision, 856 So.2d 503, 506(¶ 7) (Miss.Ct.App.2003) (citing Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 12 (Miss.1994)). The claimant must prove the following elements: "(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the claimed disability." Id. "It is well-established that recovery under the workers' compensation scheme must rest upon reasonable probabilities, not mere possibilities." Id. at 511(¶ 30) (citing Burnley Shirt Corp. v. Simmons, 204 So.2d 451, 454 (Miss.1967)). Therefore, I respectfully submit that the Commission's decision finding a compensable injury was not supported by substantial evidence. I find that the claimant failed in her burden of proof to prove an injury and consequently also failed to prove a causal connection.
GRIFFIS, J., JOINS THIS OPINION.
NOTES
[1] Although no specific injury occurred on March 19, 2002, the parties stipulated that Johnson's date of injury was March 19, 2002, and that her last day of work at Sanderson Farms was April 19, 2002.
[2] Dr. Lindley saw Johnson numerous times between May 2002 and March 2005.
[3] According to Dr. Lindley, Johnson's thoracic outlet syndrome has been resolved.
[4] Johnson never underwent the functional capacity evaluation.
[5] In her second deposition, Dr. Lindley was asked about a March 10, 2004, office note. She acknowledged seeing Johnson on that date but stated that Johnson was also seen by Dr. Jason Reem and that Dr. Reem surmised that Johnson had "questionable bilateral carpal tunnel syndrome, right greater than left." Therefore, according to Dr. Lindley, Dr. Reem gave Johnson a diagnostic injection into the carpal canal. Dr. Lindley testified that she saw Johnson almost two months after the injection and that Johnson "reported an improvement from the injection." We have scoured the record and have been unable to locate a March 10, 2004, office note.
[6] Despite her assertion, Dr. Lindley was unable to produce any medical records which reflect that Johnson had a positive NCS.
[7] A decompression of the carpal tunnel is the same as a carpal tunnel release.
[8] Sanderson Farms and its insurance carrier were also ordered to pay any penalties and interest pursuant to Mississippi Code Annotated section 71-3-37(5) and (6) (Supp.2008) and to provide medical services and supplies to Johnson as required by her injury and recovery in accordance with Mississippi Code Annotated section 71-3-15 (Rev.2000).
[9] Dr. Lindley testified that most patients who have had a carpal tunnel release would be advised to refrain from performing any repetitive wrist flexion or extension and repetitive or sustained gripping. She also testified that she would not advise the use of vibratory or air tools. Further, according to Dr. Lindley, people who have undergone a carpal tunnel release should not be exposed to cold environments for extended periods of time.