ROBERTS, J.,
for the Court:
¶ 1. The Mississippi Workers’ Compensation Commission (Commission) reversed an administrative judge’s (AJ) decision that Shelton Smiley was entitled to workers’ compensation benefits for an alleged on-the-job injury he suffered while working for Hercules Concrete Plumbing Service Inc. in February 2008. Smiley appealed the Commission’s decision to the Noxubee County Circuit Court, and the circuit court affirmed the Commission’s decision. Smiley has now appealed and asks this Court to determine whether the circuit court’s decision to affirm was supported by substantial evidence and whether its decision was arbitrary or capricious. Finding no error, we affirm.
FACTS
¶ 2. Smiley, an employee of Hercules since July 1998, was working a job in Noxubee County on February 14, 2008, that required him to connect approximately ten-foot sections of pipe through which cement would be poured. Though there is contradictory testimony as to how the injury occurred and the events following, Smiley claims that he injured his lower back while completing the job that day. Smiley claims that he reported the injury to Eli Sanchez, his coworker, to Kenny Barker, the dispatcher at Hercules, and to Paul Shelley, Hercules’s president, on the same day as the injury. Barker and Shelley testified that Smiley never informed them that the injury was an on-the-job injury. However, Smiley is adamant that he informed individuals at Hercules several times that it was an on-the-job injury.
¶ 3. Shelley explained that he had asked Smiley multiple times whether the injury was an on-the-job injury, because they would need to fill out some paperwork; however, Smiley never indicated to him that this was necessary and never *657 asked to have the paperwork filled out for the injury. Shelley testified that there was a procedure all employees followed when an on-the-job injury occurred. The employee was to report the injury to Shelley, who would fill out the appropriate paperwork. The employee would then be evaluated and treated at Baptist Occupational Medical Center, located across the street from Hercules. Shelley further testified that Smiley was familiar with this procedure, as he had been injured in the past and had utilized this procedure in seeking treatment for those injuries; however, Smiley did not follow any of this procedure.
¶ 4. According to Smiley, he again informed Shelley that his back was injured and that he would not be able to work. Smiley also attempted to see his family doctor, but could not do so because the doctor was unable to see him that day. It was not until February 18, 2008, that Smiley was able to see a medical professional regarding his back. Smiley stated that he informed the nurse practitioner that he was injured at work and that she ordered that he remain off work and placed him on lifting restrictions of no more than ten pounds. There is no notation on his medical records with the nurse practitioner indicating an on-the-job injury occurred. No other medical records presented indicate an on-the-job injury occurred. Smiley did attend physical therapy six times, but he did not receive any further treatment or evaluation for his injury until the independent medical examination in June 2009.
¶ 5. On June 5, 2009, Smiley was evaluated by Dr. David Collipp with NewSouth NeuroSpine at the request of the insurance carrier. Dr. Collipp’s report notes that Smiley’s medical records after the February 2008 incident indicate that there was no known injury and “[tjhere [was] no documentation of any work injury, or any other injury.” Dr. Collipp further noted that “[f]rom the available information, particularly the documentation from around the time of the injury, it does not appear [Smiley] suffered a work-related injury.” Additionally, Dr. Collipp stated that, hypothetically, if Smiley’s injury was work related and was a lumbar strain, Smiley “would have reached maximum medical improvement on or about March 14, 2008[.]” Lastly, Dr. Collipp found that Smiley “has a minimum of medium duty according to his physical examination, with a minimum maximum lift of [fifty] pounds.”
PROCEDURAL HISTORY
¶ 6. On July 10, 2008, Smiley filed his petition to controvert. A hearing was held before the AJ on March 2, 2010, where the AJ heard live testimony from Smiley and reviewed Smiley’s medical records, the deposition of Shelley, the deposition of Kevin McCarthy, and phone records. The AJ found that Smiley’s testimony as to his injury was credible; therefore, he did suffer a compensable injury. The AJ awarded Smiley temporary total disability benefits from the date of the injury until March 10, 2008, and found that any further determination would require the submission of additional evidence. Additionally, the AJ found Smiley should undergo an MRI to aid in determining “further proposed treatment, maximum medical improvement, disability ratings[,] and permanent restrictions.... ”
¶ 7. Hercules and its insurance carrier appealed the AJ’s decision to the Commission. On October 18, 2010, the Commission reversed the AJ’s decision because of several inconsistencies in Smiley’s testimony and “the lack of any history of a work injury in the initial medical reports following the date of alleged injury.” In *658 considering all the evidence presented, the Commission ultimately found Shelley’s testimony of the events to be more credible than Smiley’s. Smiley timely filed his appeal of the Commission’s decision to the circuit court. The circuit court affirmed the Commission’s decision by order dated April 5, 2012. Still aggrieved, Smiley filed the present appeal.
¶ 8. On appeal, Smiley raises two issues:
I. Did the [Commission] err when it overturned the [AJ] and determined that [Smiley] did not suffer an on[-]the[-]job injury while employed by [Hercules]?
II. Mississippi is a notice pleading state[; therefore] the purpose of pleading in Mississippi is to give notice, not state facts.
STANDARD OF REVIEW
¶ 9. “Our standard of review in actions arising under Workers’ Compensation Law is limited to determining whether the Commission erred as a matter of law or made findings of fact contrary to the overwhelming weight of the evidence.” Smith v. Johnston Tombigbee Furniture Mfg. Co., 43 So.3d 1159, 1164 (¶ 15) (Miss.Ct.App.2010) (citing Clements v. Welling Truck Serv. Inc., 739 So.2d 476, 478 (¶ 7) (Miss.Ct.App.1999)). If the Commission’s order is not “based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law,” then reversal of its order is appropriate. Id. (citing Weatherspoon v. Croft Metals Inc., 853 So.2d 776, 778 (¶ 6) (Miss.2003)). Additionally, “the Commission, not the administrative judge, is the ultimate fact-finder, and this Court will apply a general deferential standard of review to the Commission’s findings and decisions despite the actions of the administrative judge.” Id. at (¶ 17) (quoting Smith v. Jackson Constr. Co., 607 So.2d 1119, 1123-24 (Miss.1992)).
ANALYSIS
¶ 10. Smiley’s primary argument is that the Commission erred because the uncorroborated testimony of a claimant “should be accepted by the Commission unless it is inherently improbable, incredible, unreasonable, or shown to be untrustworthy.” Washington v. Woodland Village Nursing Home, 25 So.3d 341, 357 (¶ 40) (Miss.Ct.App.2009) (citing Penrod Drilling Co. v. Etheridge, 487 So.2d 1330, 1333 (Miss.1986)). However, we find that the Commission’s decision was based on substantial evidence, and was not arbitrary or capricious or based on an erroneous application of the law. Upon our review of the record, we find that there was substantial evidence to support the Commission’s finding that Smiley did not suffer a compensable injury.
¶ 11. The Commission sits as the finder of fact, irrespective of the AJ’s findings. Lott v. Hudspeth Ctr., 26 So.3d 1044, 1048 (¶ 12) (Miss.2010) (citing Smith v. Container Gen. Corp., 559 So.2d 1019, 1021 (Miss.1990)). As the finder of fact, the Commission is also charged with determining the credibility of the witnesses and evidence presented. Short v. Wilson Meat House, 36 So.3d 1247, 1251 (¶23) (Miss.2010) (citations omitted). When conflicts in credible evidence arise, the Commission is also charged with determining where the preponderance of the evidence lies. Richardson v. Johnson Elec. Auto. Inc., 962 So.2d 146, 152 (¶ 16) (Miss.Ct.App.2007). Additionally, “contradictory or negative testimony concerning the cause of injury may be substantial evidence upon which a claim may be denied.” Langford v. Southland Trucking LLC, 30 So.3d 1266, 1277 (¶ 40) (Miss.Ct.App.2010) (citing Westmoreland v. Landmark Furniture *659 Inc., 752 So.2d 444, 449 (¶ 15) (Miss.Ct.App.1999)).
¶ 12. The Commission reviewed Smiley’s testimony given at the hearing before the AJ. Smiley testified that on February 14, 2008, he was working a job for Hercules. His job was to connect pipes that would carry cement from a cement truck to a slab. He testified that he was lifting one of the pipes when he injured his lower back. According to Smiley, he immediately informed Sanchez of his injury and then called several people at Hercules about his injury; specifically, he spoke directly to Shelley. Smiley presented phone records showing he called Shelley’s cell phone at the time of the injury, and he claimed it was during that phone call that he informed Shelley he had been injured. He also stated that he spoke -with Shelley in person on February 15, 2008, about his injury. Smiley finished the rest of the job responsibilities for that day, but he had to take two BC powders. Smiley also explained that when he was able to see the medical professional on February 18, 2008, he did inform her that he had hurt his lower back at work; however, the medical report for that visit indicates that there was no known injury.
¶ 18. The Commission also reviewed the deposition testimony of Shelley. In Shelley’s deposition, he stated: “I tried to get [a hold] of [Smiley] a few days after [the injury] because he [did not] call, [and] he [did not] show up for work. I finally got in touch with [him], and he claimed that his back was hurting from an old injury.” Shelley further explained that when he started receiving calls from a doctor’s office about insurance for Smiley, he again called Smiley and asked if it was a workers’ compensation injury, and “[Smiley] stated to me again that this was not a [workers’ compensation] injury.” A letter dated March 5, 2008, written by Shelley to Smiley, was also entered into evidence. The letter indicates that if Smiley had been injured, he would need to come in to the office and fill out the proper paperwork.[1] Shelley testified that Smiley never came in to fill out the paperwork. Shelley additionally explained that Smiley was very familiar with Hercules’s policy on workers’ compensation injuries because Smiley had utilized the procedure in the past on more than one occasion. A written statement from Sanchez, Smiley’s coworker the day of the alleged injury, was produced in which Sanchez denied he had seen Smiley injure himself. McCarthy’s deposition was also reviewed by the Commission. In it McCarthy stated that in the past he had given Smiley BC powders for back pain on multiple occasions. McCarthy stated that he could not remember a time where Smiley told him his back pain was worse than any other time, nor could he remember whether Smiley ever told him he injured his back on February 14, 2008. According to McCarthy, “[Smiley] told every [Hercules] operator in that whole place that his back hurt for years.”
¶ 14. In the present case, the Commission was presented with conflicting testimony regarding an alleged injury. *660 While Smiley contended he informed several employees of Hercules about the injury, his testimony was contradicted by the depositions of Shelley and McCarthy. The Commission specifically stated that it found Shelley’s testimony to be more trustworthy than Smiley’s testimony. It was the Commission’s duty as the finder of fact to weigh the contradictory evidence, and determine which testimony was more credible. Based on our review of the record, we agree the Commission logically could find Shelley’s testimony was more credible than Smiley’s. Smiley did nothing to facilitate a workers’ compensation claim even though he had utilized Hercules’s worker’s compensation procedure pri- or to his alleged injury, and was informed via the letter on March 5, 2008, of what he needed to do if his injury was a workers’ compensation injury.
¶ 15. Also of importance is the lack of medical evidence presented showing a causal link between Smiley’s employment and his injury. In workers’ compensation cases, the claimant bears the burden of proving by a fair preponderance of the evidence that an injury occurred, and that the injury has a causal connection with the claimant’s employment. City of Laurel v. Blackledge, 755 So.2d 573, 577-78 (¶17) (Miss.Ct.App.2000) (citing Hedge v. Leggett & Platt Inc., 641 So.2d 9, 13 (Miss.1994)). “The causal connection between the claimant’s injury and disability must be proven with competent medical proof and based upon a reasonable degree of medical probability.” Anthony v. Town of Marion, 90 So.3d 682, 690 (¶ 28) (Miss.Ct.App.2012) (quoting Airtran v. Byrd, 953 So.2d 296, 299 (¶ 3) (Miss.Ct.App.2007)). The sole medical evidence in the record on Smiley’s behalf is the medical record from his visit to the nurse practitioner on February 18, 2008, in which there was a notation that there was “no known injury.” The only other medical evidence contained in the record is a letter from Dr. Collipp, who examined Smiley on June 5, 2009, as well as Smiley’s medical history. As was explained above, Dr. Collipp opined that “it does not appear [that Smiley] suffered a work-related injury.” No testimony or evidence was presented linking Smiley’s employment at Hercules to his claim of lower-back pain. We find that this issue is without merit.
¶ 16. Smiley also argues that the Commission erred because it relied on inconsistencies in his testimony and his petition to controvert when it rejected his claim that he had suffered a compensable injury. He submits that because Mississippi is a notice-pleading state, his petition to controvert was solely to give notice and not to state facts; therefore, the Commission erred in relying on the inconsistencies. While the Commission noted the inconsistencies, a review of the record shows that there was additional evidence, described above, to support the Commission’s decision. This issue is without merit.
¶ 17. THE JUDGMENT OF THE NOXUBEE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J„ DISSENTS WITH SEPARATE WRITTEN OPINION.

. The full letter stated:
If you are disabled and cannot work[,] then you will need to report to [Hercules] ... to fill out the proper forms for [workers’ compensation.] You would also be required to be examined by the physician at Baptist Occupational] Health Facility in Pearl. This is all proper procedure when any employee desires to file a claim on [workers’ compensation]. After [filing] this claim[,] you would need to keep in touch with [Shelley] at [Hercules] ... at least [two] or [three] times a week to report about your condition.
If you are not disabled and can work, you are required to report to work at Hercules ... immediately.